Fox and wife, Plaintiffs and Respondents, v. PETTIS and others, Defendants and Appellants: HERITAGE MUTUAL INSURANCE COMPANY, Defendant and Respondent.

*March 7—May 1, 1962.*

For the appellants there was a brief by *Humke, Poole & Axel* of Sheboygan, and oral argument by *Paul L. Axel.*

For the respondents Fox there was a brief by *Alfred B. Gerber* of Sheboygan.

For the respondent Heritage Mutual Insurance Company there was a brief by *Holden & Peckham* of Sheboygan, and oral argument by *John R. Holden* and *Verlin H. Peckham.*

DIETERICH, J.   The only issues to be determined on this appeal are whether there was an abuse of discretion on the part of the trial court when it changed the jury's finding of negligence on the part of Michael Fox and its finding of causal negligence on the part of Donald Wunsch. Thus, our inquiry is directed to the question of whether there was any credible evidence with which to sustain those findings by the jury which were changed by the trial court.

At the time the accident occurred Harlow Pettis was sixty years of age and had been driving trucks for thirty-four years. He was driving a new truck in perfect operating condition carrying a load of nine to 10 tons of plywood for Ebenreiter Woodworking Company. Pettis was traveling north at a speed of 20 to 25 miles per hour on Calumet drive in Sheboygan.

Calumet drive is 40 feet wide. However, on the day of the accident snowbanks reduced the usable width of the street considerably. From the center line to the east curb the distance was 20 and one-half feet. The snowbank intruded onto the street a distance of two feet, eight and one-half inches leaving a usable traffic lane of 17 feet, nine and one-half inches. Wunsch's automobile was six and one-half feet wide and at the time of the accident was parked on the east side of the street immediately next to the snowbank. The car was parked approximately 20 feet north of the crosswalk at the intersection of Calumet and Bell avenue. The testimony of several witnesses at the trial suggests that another car had been parked immediately behind the Wunsch vehicle when the accident occurred, but was moved before it could be identified. There was also a car parked on the west side of Calumet drive directly opposite the Wunsch car.

As Harlow Pettis drove north on Calumet drive he was faced with a lane only 11 feet, three inches wide at the point of the collision. The truck he was driving was eight feet wide and over 48 feet long. The weather was clear and the road was dry. Pettis testified that he was driving close to the center line. As Pettis approached the intersection of Bell and Calumet he testified that he saw two boys in the east crosswalk of Bell avenue riding bicycles slowly north. The testimony of Pettis is that he thought the boys were going onto the sidewalk, that as he proceeded north through the intersection he heard or felt a bump on the side of the truck and immediately stopped. He saw a boy under the truck located near or against the rear trailer wheels and opposite the Wunsch car. Pettis' testimony is that he then backed the truck four or five feet so that the wheels would not be against the boy. Pettis testified that he did not see the boy and bicycle before the accident and did not know why he had not seen him.

An eyewitness to the accident, Arthur Schoerner, corroborated the story of Pettis except that Schoerner claimed

that he talked to Pettis after the accident and Pettis said that he had seen the boy, but could not turn out of the way because a car was coming toward him. Schoerner testified that he then said to Pettis that he had brakes on the truck, to which statement Pettis made no answer.

A doctor arrived on the scene immediately after the accident occurred and the ambulance arrived soon after, but the Fox boy died before reaching the hospital. The police arrived soon after the doctor and had the Wunsch car moved in order to allow the ambulance to remove the Fox boy. Scratches were later found on the lower section of the left door of the Wunsch car. The police also made measurements and found that the rear trailer wheels of the truck were one foot from the center line. Therefore the space between the truck-trailer and the Wunsch car, where the boy was struck, amounted to approximately 27 inches.

John Pilgrim and Kenneth Schneider, classmates of Michael, were riding with him just before Michael was killed. Their testimony is that they entered Calumet drive at Cooper street, one block south of the intersection near which the accident occurred, that when they turned from Cooper street onto Calumet they saw the Ebenreiter truck at the railroad tracks, which are about one block south of the intersection near which Michael was hit by the truck. They testified further that they rode to the intersection of Calumet and Bell where Kenneth left the street by going between two parked cars and a shoveled-out area onto the east of Calumet drive. John's testimony is that he proceeded ahead of the two parked cars and rode up a driveway and onto the sidewalk and that when he stopped the accident had already occurred. According to his testimony Kenneth looked back when he reached the sidewalk and saw Michael hit by the right front corner of the trailer when Michael was alongside the parked cars. The boys testified that they knew the truck was coming and were aware that the situation was dangerous. Kenneth's testimony is that he shouted to John and

Michael when they entered Calumet drive to warn them of the truck's presence and that when on Calumet drive he called to the other two boys riding in single file that they should go onto the sidewalk to avoid being hit by the truck. John, who was riding second in the single-file line, testified that he heard Kenneth's warning. However, the testimony does not show how far behind Michael was, or whether he heard the warning.

It is undisputed that the Wunsch car was parked as close to the snowbank as practicable. The only question is whether the car should have been parked there at all. The measurements taken by the police indicate that approximately 11 feet, three inches of the roadway remained in the east lane of Calumet drive after the parking of the Wunsch car. It is relevant that sec. 346.51 (1) (a), Stats., requires that only 15 feet of unobstructed roadway be left opposite the parked vehicle. In the instant case an unobstructed width of over 20 feet remained for the passage of traffic after Donald Wunsch had parked the car. There was no evidence that there were any signs posted which created a no-parking zone where the Wunsch car was located. Other cars were also parked on Calumet drive in this same area. Under these circumstances it cannot be said that Donald Wunsch did not meet the standards of care imposed by the reasonable-and-prudent-man test. His action in parking the car did not compare unfavorably with those actions indulged in by the great mass of mankind when called upon to perform the same act, to wit, parking an automobile under similar conditions.

There is no testimony or evidence in the record to show that the Fox boy was guilty of any negligence whatsoever. The jury found him causally negligent with respect to lookout and also management and control. The facts were that Michael was caught between the parked cars and the truck which had approached from his rear. Michael was riding on the right side of the roadway, close to the parked cars, there

was no other duty he had with respect to the overtaking truck. The sole cause for the accident was Pettis' failure to see the boy, Michael Fox, and if he did see Michael, to stop or give him more room in passing.

A review of the entire record fails to disclose any credible evidence to support the jury's findings of negligence on the part of either Donald Wunsch or Michael Fox.[1]

On the question of damages, the jury found $8,000 would reasonably compensate Arthur and Magdalen Fox for the loss of society and companionship of their son. No money was awarded for pain and suffering of Michael Fox or for pecuniary loss as a result of Michael's death. The funeral expenses of Michael were $635 as answered by the court with consent of counsel. Pursuant to sec. 331.04 (4), Stats.,[2] under which the damages in a wrongful-death action are limited, the trial court reduced the damages of $8,000 for loss of society and companionship to the statutory limits of $3,000.

It therefore necessarily follows that the judgment of the trial court be and is affirmed.

*By the Court.*—Judgment affirmed.

---

[1] See *Konieczki v. Great American Indemnity Co.* (1961), 12 Wis. (2d) 311, 107 N. W. (2d) 138, and *Maltby v. Thiel* (1937), 224 Wis. 648, 272 N. W. 848.

[2] "Judgment for damages for pecuniary injury from wrongful death shall not exceed $22,500. Additional damages not to exceed $3,000 for loss of society and companionship may be awarded to . . . parents of deceased."