Myron F. YORK and Judith A. York, Plaintiffs-Respondents-Cross Appellants,

v.

NATIONAL CONTINENTAL INSURANCE COMPANY, a foreign insurance corporation, J.H. Ware Trucking, Inc., a foreign corporation, and Darrell T. Coffey, Defendants-Appellants-Cross Respondents.†

Court of Appeals

*No. 90–0184. Submitted on briefs September 18, 1990.—Decided October 2, 1990.*

(Also reported in 463 N.W.2d 364.)

† Petition to review denied.

488

On behalf of the defendants-appellants-cross respondents, the cause was submitted on the briefs of *Robert H. Magie, III* of *Crasweller, Magie, Andresen, Haag & Paciotti* of Duluth, Minnesota.

On behalf of the plaintiffs-respondents-cross appellants, the cause was submitted on the brief of *DeBardeleben & Associates* of Park Falls.

Before Cane, P.J., Myse and Dykman, JJ.

CANE, P.J.    National Continental Insurance Company, J.H. Ware Trucking, Inc., and Darrell T. Coffey (collectively National) appeal a judgment based on a finding of negligence in the death of Craig York and an order denying a motion for reconsideration. National contends that the jury's finding of causal negligence was not supported by credible evidence, that the trial court erred by allowing an expert witness to testify to his speculations regarding the manner in which the accident occurred and that the trial court erred by not submitting to the jury the issue of the comparative negligence of two non-parties. Myron and Judith York, Craig York's parents, cross-appeal and contend that the trial court erred by limiting the jury award for loss of society and companionship to a total of $50,000 for both parents.

We conclude that the testimony of the expert witness was admissible and that the jury's finding of causal negligence was supported by credible evidence. We further conclude that National was not prejudiced by the court's refusal to submit the issue of the non-parties' negligence to the jury, and that the sec. 895.04(4), Stats., limit of $50,000 for loss of society and companionship in a wrongful death action was properly imposed on the class of beneficiaries described as "parents of the deceased." We therefore affirm the judgment and order. We deny the Yorks' request that we deem National's appeal frivolous under sec. 809.25(3)(a), Stats.

Craig York, an employee of Capitol Polymers, was unloading a semi-trailer containing large bales of plastic weighing approximately 940 pounds each when he was killed. The truck belonged to J.H. Ware Trucking, Inc., and Darrell Coffey was the driver who made the delivery to Capitol Polymers. Coffey took on a load of plastic in North Carolina, signing a bill of lading indicating that the cargo had been properly loaded by the shipper. Cof-

490

fey then drove to Madison, Wisconsin, to make the delivery to Capitol Polymers.

Craig York was on duty to unload the truck for Capitol Polymers. York's employer testified that Coffey had no contractual responsibility to assist York in unloading the truck. The J.H. Ware driver's manual, introduced into evidence at trial, indicated that Coffey was responsible for ensuring that the truck was clean before it was loaded and for noting any shortages or damaged freight when delivered.

Coffey was not checking the delivery for damage or shortage at the time of the accident. Instead, he was resting in the tractor portion of the truck. He later found York face down in the trailer, crushed under several large bales. There was no witness to the accident.

Trial testimony revealed that Coffey had driven a truck for J.H. Ware for only a few months before the accident and that the load of plastic was the first load of that type he had transported. The trailer on Coffey's truck was refrigerated, with metal floors. There was disputed testimony that the interior of the truck and at least one of the bales removed was wet.

Coffey instructed the shipper in North Carolina to load the trailer in stacks of three bales toward the front, two bales at the center, and three bales at the back. Most of the weight was distributed over the axles, rather than in a uniform configuration two bales high throughout the trailer, with any extra bales placed on top. Coffey's trailer was equipped with portable load locks designed to keep loads from shifting in transit, but he did not use those locks on the plastic bales.

The Yorks' expert testified at trial that, in his opinion, York unloaded three bales of plastic with the forklift, and then entered the trailer to check the position of the remaining bales. The accident occurred because the

unsecured bales, which had shifted in transit, fell over when he entered the trailer. The wet floor of the refrigerated trailer caused York to slip, so he could not avoid the falling bales.

National's witness, a special investigator with the Madison Police Department, stated that the floor of the trailer was not slippery or wet at the time he inspected it, but that one of the bales that had been removed had moisture on it. In his opinion, the bales had shifted only slightly in transit. The investigator further testified that the trailer was 9.5 inches higher than the loading dock and that the dock plate connecting the two required the forklift to approach the trailer at an angle, which meant that it could not reach under the bales near the rear of the trailer.

The investigator stated that, in his opinion, York had unloaded only one bale from the trailer before the accident. He further testified that co-employees reported York's past practice of pulling bales off the top of stacks and onto the trailer beds by hand, rather than using a forklift. The investigator observed employees unloading the truck in this fashion after the accident.

The jury's verdict found Craig York not at fault for the accident and apportioned 25% of the causal negligence to Coffey and 75% to J.H. Ware. The jury was not asked to evaluate the negligence of the North Carolina shipper or Capitol Polymers, Craig York's employer.

National first contends that the jury's finding of causal negligence was not supported by credible evidence. In National's view, Craig York's presence in the trailer at the time he was crushed by the falling bales could as easily have been explained by his past practice of unloading bales by hand as by some unexplained purpose to check the location of the remaining bales after he had completed a partial unloading via forklift.

A jury verdict will not be upset if there is any credible evidence to support it. The evidence will be viewed in the light most favorable to the verdict. This is especially true where the verdict has the approval of the trial court. *Meurer v. ITT General Controls,* 90 Wis. 2d 438, 450–51, 280 N.W.2d 156, 162 (1979). The credibility of witnesses and the weight given to their testimony are left to the judgment of the jury, and where more than one reasonable inference can be drawn from the evidence, we accept the inference drawn by the jury. *Id.* On appeal, the obligation of this court is to search for credible evidence that will sustain the verdict, not for evidence to sustain a verdict the jury could have but did not reach. *Id.*

Here, a reasonable jury could have believed the Yorks' expert's version of the accident, or that of the investigator, and still have found National negligent. There was evidence that Coffey was inexperienced in handling this type of load, that he failed to use available load locks, and that he directed that his trailer be loaded in a non-uniform configuration. The jury could infer that this loading pattern, when the bales were unsecured, caused the bales to shift in transit. The J.H. Ware refrigerated trailer could be viewed as inappropriate for this type of shipment, and the jury was entitled to infer from the evidence of the metal floor and the one damp bale that the floor was slippery at the time York was unloading the trailer. The question of York's comparative negligence was squarely before the jury, and it determined that York was not negligent. The jury's verdict is supported by credible evidence.

National's second contention, that the trial court erred by allowing an expert witness to testify, over objec-

tion, to his speculations regarding the manner in which the accident occurred, is related to its first argument that the jury's finding is not supported by credible evidence. National argues that the expert's opinion was at best conjectural. Speculation alone is an insufficient basis for a finding of causal negligence. *Anello v. Savignac,* 116 Wis. 2d 246, 251, 342 N.W.2d 440, 442 (Ct. App. 1983).

We reject National's argument. National's own expert, the police investigator, testified to the moisture on one bale of the shipment. The forklift was found ten feet from the scene of the accident, and it was still running. James Bodi, the Yorks' expert, is a registered professional engineer with a specialty in industrial engineering. A witness qualified as an expert may testify in the form of an opinion or otherwise. Section 907.02, Stats. The Yorks' expert's opinion that the load had shifted in transit and the resulting tension caused three bales to fall forward and crush York is a plausible explanation of physical facts. We conclude that the testimony of the Yorks' expert was more than mere speculation; rather, it was a qualified opinion based upon his expertise, first-hand observations and investigation of the accident.

Third, National contends that the trial court erred by not submitting to the jury the issue of the comparative negligence of the North Carolina shipper or of Craig York's employer, Capitol Polymers. If there is evidence of conduct that, if believed by the jury, would constitute negligence on the part of an actor, then that actor should be included in the special verdict. *See Connar v. West Shore Equip.,* 68 Wis. 2d 42, 45, 227 N.W.2d 660, 662 (1975). Evidence at trial demonstrated that Coffey directed the loading of his truck in North Carolina, and

then signed a receipt indicating that the truck had been properly loaded. We conclude that the trial court did not err in determining that there was no evidence of tortious conduct by the shipper supporting the submission of this issue to the jury. We do not reach the issue of whether there was sufficient evidence introduced at trial to support the inclusion of the employer in the special verdict because National has demonstrated no prejudice stemming from the trial court's decision.

We distinguish this case from *Connar* because in *Connar,* the employee whose widow was pursuing a wrongful death action was found to be 34% causally negligent. The distributor of the faulty equipment was found to be 25% causally negligent, while the manufacturer of the equipment was found to be 41% causally negligent. The distributor was dismissed from the lawsuit because its causal negligence was less than the deceased employee's. The *Connar* court recognized that, had the employer been included in the special verdict form, the causal negligence of the manufacturer could also have ended up to be less than 34%, which would have resulted in its dismissal from the suit as well. *Id.* at 46, 227 N.W.2d at 663.

In the case before us, worker's compensation death benefits were the Yorks' sole remedy against Capitol Polymers, and Coffey and J.H. Ware, as third-party tortfeasors, could not require contribution or indemnity from the employer, even if Capitol Polymers were substantially more at fault than they. *See Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 177, 290 N.W.2d 276, 278 (1980).

Where, as here, the deceased employee is found not to be causally negligent, there is no prejudice from failure to include his employer in the special verdict question.

The jury determined that Coffey and J.H. Ware were causally negligent, so the only effect of adding a question as to the employer's negligence would be to potentially change the apportionment of negligence between the tortfeasors. A jury that has found causal negligence by an actor does not change that determination to one of no causal negligence when another actor is added to the equation. On appeal, National is not entitled to relief unless the error complained of has affected its substantial rights. *See* sec. 805.18(2), Stats. Coffey and J.H. Ware would remain jointly and severally liable to the Yorks regardless of the proportion of negligence assigned to Capitol Polymers.

On cross-appeal, Myron and Judith York, Craig York's parents, contend that the trial court erred by limiting the jury award of $100,000 for loss of society and companionship to a total of $50,000 for both parents. They argue that the statutory limit of damages for loss of society and companionship in a wrongful death action applies to each party entitled to bring an action under the statute. We do not agree.

Statutory construction presents a question of law that we decide without deference to the trial court's determination. *Suburban State Bank v. Squires,* 145 Wis. 2d 445, 448, 427 N.W.2d 393, 394 (Ct. App. 1988).

Section 895.04(4), Stats., provides:

> Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. *Additional damages not to exceed $50,000 for loss of society and companionship may be awarded to the spouse, children or parents of the deceased.* (Emphasis added.)

In 1962, the supreme court interpreted the similar language of the predecessor statute, sec. 331.04(4), Stats. (1961),[1] as requiring the reduction of a jury award of $8,000 to two parents of a deceased child to the statutory limit of $3,000. *Fox v. Pettis,* 16 Wis. 2d 397, 402, 114 N.W.2d 836, 839 (1962).

Where a legislative act has been construed by the supreme court, the legislature is presumed to know that, in the absence of a change in the law, the court's construction of the statute will remain unchanged. *Reiter v. Dyken,* 95 Wis. 2d 461, 470-71, 290 N.W.2d 510, 515 (1980). This presumption of legislative adoption or ratification of a judicial statutory construction is entitled to less weight when the court's construction is followed by nearly complete inaction on the part of the legislature. *Id.* at 471, 290 N.W.2d at 515-16. Where the legislature has made amendments to the statutory section in question and has not corrected the court's interpretation, the presumption of adoption or ratification is strengthened. *Id.* at 471-72, 290 N.W.2d at 516.

Since the supreme court's decision in *Fox,* the legislature has acted to change the language of sec. 895.04(4), Stats., at least nine times.[2] On four occasions, the legis-

---

[1]Section 331.04(4) provided, in pertinent part: "Judgment for damages for pecuniary injury from wrongful death shall not exceed $22,500. Additional damages not to exceed $3,000 for loss of society and companionship may be awarded to spouse, unemancipated or dependent children or parents of deceased." Section 331.04(4) was renumbered sec. 895.04(4), Stats., in 1965. Sec. 2, Ch. 66, Laws of 1965.

[2]*See* 1985 Wis. Act 130; 1983 Wis. Act 315; ch. 166, Laws of 1979; ch. 287, Laws of 1975; ch. 166, Laws of 1975; sec. 5, ch. 213, Laws of 1971; ch. 59, Laws of 1971; ch. 436, Laws of 1969; and ch. 267, Laws of 1967.

lature specifically focused on the language of the sentence at issue, raising the statutory limit each time without changing its description of the parties who could recover that limit.[3] The presumption is that the legislature has adopted or ratified the *Fox* court's interpretation of the statutory limit.

The Yorks contend, however, that our decision in *Boles v. Milwaukee County,* 150 Wis. 2d 801, 443 N.W.2d 679 (Ct. App. 1989), interpreting the language of sec. 893.80(3), Stats., supports a construction of the wrongful death statute allowing recovery by each parent up to the statutory limit. Section 893.80(3) provides, in pertinent part: "The amount recoverable by any person for any damages, injuries or death in any action founded on tort against . . . [a] political corporation, governmental subdivision or agency thereof . . . shall not exceed $50,000." In *Boles,* we held that each of three children was entitled to recover up to the sec. 893.80(3) maximum for the death of their mother. *Id.* at 815, 443 N.W.2d at 684.

In *Boles,* we interpreted a different statute from the one at issue here. The language of sec. 893.80(3), Stats., is demonstrably different from that of sec. 895.04(4), Stats., in that recovery under the former is allowed to "any person," while the latter provides for damages recoverable by "the spouse, children or parents of the deceased." In addition, our analysis in *Boles* makes clear that this construction was not meant to be extended to portions of the wrongful death statute that act to limit recovery:

> The County argues that a wrongful death action, unknown to the common law, was created and

---

[3]*See* 1983 Wis. Act 315; ch. 166, Laws of 1979; ch. 287, Laws of 1975; ch. 436, Laws of 1969.

defined by statute. Section 895.04(2), Stats., provides that if no spouse survives, the amount recovered shall vest in the deceased's lineal heirs as determined by sec. 852.01, Stats. Section 852.01 defines intestate succession. Therefore, the County concludes that the maximum recovery goes to the class limited by intestate succession.

*We reject this argument because secs. 895.04(2) and 852.01, Stats., define who shall recover rather than the amount of recovery.*

*Id.* at 814, 443 N.W.2d at 684 (emphasis added). It is obvious that the sec. 895.04(4) limitation on recovery for loss of society and companionship in a wrongful death action *does* define the amount of recovery, and so *Boles* does not apply. The county's argument advanced in *Boles* is persuasive here, where we are dealing with a statute that limits the amount of recovery available to three classes of persons.

■

We hold that the sec. 895.04(4), Stats., limit of $50,000 for loss of society and companionship in a wrongful death action is recoverable by the spouse of the person deceased, or if no spouse is living by the class of children of the person deceased as defined in sec. 895.04(2), or if no children are living by the class of parents of the person deceased.

We deny the Yorks' request that we deem National's appeal frivolous and award costs, fees and attorney's fees under sec. 809.25(3)(a), Stats. The judgment and order of the trial court is affirmed.

*By the Court.*—Judgment and order affirmed.