RAYBORN, Appellant, vs. GALENA IRON WORKS COMPANY, Respondent.

*November 20—December 8, 1914.*

*Settlement: Written instrument: Signing: Presumption: Master and servant: Injury: Release.*

1. Compromise settlements are favored in the law when fairly made.
2. The signing of an instrument raises a strong presumption that its contents are understood, which is not overcome by a mere statement of the signer that he did not understand the nature of the document which he signed.

3. The jury having in this case, upon sufficient evidence, negatived
   fraud in the transaction which resulted in the signing of a re-
   lease by an employee twelve days after he was injured and while
   he was still in the hospital, the evidence, including his own tes-
   timony and that of his physician who was present, is *held* not
   to sustain a further finding by the jury to the effect that the re-
   lease was not consciously signed by him.

APPEAL from a judgment of the circuit court for La Fay-
ette county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

Action to recover damages for personal injury. Defend-
ant was engaged in wrecking an abandoned mining plant.
Plaintiff was directed to remove some boards from the roof
of the engine room. This roof was adjacent to the derrick
in which the hoister room was built. The hoister-room floor
was about eighteen feet from the ground. In proceeding to
the engine-room roof plaintiff had occasion to pass over this
floor, and when near the outer edge of it one of the boards
gave way and he fell and was badly injured. The negli-
gence claimed was failure to furnish a safe place to work and
failure to warn the plaintiff of the danger incident to the
work which he was directed to do. The answer denied neg-
ligence and pleaded settlement and release. Plaintiff was
injured June 13, 1913. The jury returned the following
special verdict:

"(1) Was the plaintiff at the time he signed the release in
question able to understand its nature? *A.* No.

"(2) At the time the release was signed by the plaintiff,
was he, in view of all of the existing circumstances, under
such false impression as to his rights and the character of the
instrument of release and the effect of it as should in justice
avoid said release? *A.* No.

"(3) Did the defendant negligently fail to warn the plaint-
iff that the board in question was loose? *A.* No.

"(4) Did the defendant negligently fail to fasten or se-
cure the board in question? *A.* No.

"(5) Ought the defendant in the exercise of ordinary care
to have ascertained that the board in question was not safely

fastened to the joists and have fastened it before the accident to plaintiff? *A.* No.

"(6) Ought the defendant in the exercise of ordinary care as a reasonably prudent person reasonably to have foreseen that the loose condition of this board was such that an injury might naturally and probably result to a workman exercising ordinary care for his safety who might walk upon the floor where this board was? *A.* No.

"(7) Did any want of ordinary care upon the part of the plaintiff contribute to cause his injury? *A.* No.

"(8) What sum of money will compensate the plaintiff for the injury he received from the accident of June 13th last? *A.* Five thousand dollars."

Judgment for defendant was rendered on this verdict. Plaintiff appeals.

For the appellant there were briefs by *Belle Quinlan* and *Kopp & Brunckhorst,* and oral argument by *L. A. Brunckhorst.*

For the respondent there was a brief signed by *Freeman & Geilfuss,* and oral argument by *R. R. Freeman.*

BARNES, J.    The plaintiff urges that the court erred (1) in not awarding him judgment on the verdict, and (2) in not granting a new trial if he was not entitled to judgment on the verdict.    A number of grounds for a new trial are argued.

The conclusion reached by this court on the defense of accord and satisfaction obviates the necessity for discussing any other question in the case.    By its answer to the first question the jury found that the plaintiff at the time he signed the release was not able to understand its nature.    The plaintiff testified that he had suffered a great deal of pain and had been taking morphine for relief and that he had no recollection of signing the release or of its contents.    This evidence formed the basis of the answer of the jury to question 1.

By the answer to question 2 it was found that plaintiff did not sign the release under such false impression as to his

rights and as to the character of the instrument as should in justice avoid it.

There is at least a seeming inconsistency between the answers to those two questions, but it is clear that the answer to the second question negatives the idea that any fraud was practiced on plaintiff or that he was subjected to undue influences or unconscionably dealt with.

The controlling question in the case is: Did the evidence warrant the jury in saying in effect that the release was not consciously signed by the plaintiff? The settlement was made twelve days after the date of the injury by one Spoor, an agent of the Fidelity & Casualty Insurance Company. It was made at the hospital where plaintiff was confined, and those present were plaintiff, Spoor, and Dr. Leitzel. Plaintiff's wife was present part of the time, but it does not appear that she took any very active part in making the settlement. Dr. Leitzel was the plaintiff's family physician and attended him after he received the injury. The plaintiff testified that Spoor called on him and told him he came to make a settlement for the injury and that he had a letter from the doctor saying that plaintiff would be able to sit up in ten days and to return to work in six weeks. Spoor denies making this latter statement. Plaintiff says he told Spoor that it was only twelve days since the injury occurred and that the plasters were not yet off and that he could not think of talking settlement unless the doctor was there to know his condition; that Spoor then asked him where the doctor lived and that he told him, and that Spoor went out and returned in a few moments saying the doctor was out; that Spoor remained a short time, during which the terms of settlement were not discussed; that Spoor then went out and returned with the doctor and that they then took up the question of settlement; that he asked the doctor how soon he would be able to sit up and how long it would be before he was able to work; that the doctor told him he would be able to sit up in a week and to

go to work in eight weeks from the time he was hurt, and that he relied on such statement; that "Spoor said he had been informed that my wages were $28 a week and that under the Illinois law I would only get one half my wages and not to exceed $25 per week;" that he told Spoor he thought that under the Wisconsin law he would get sixty-five per cent. of his wages, but that Spoor insisted the matter would have to be settled under the Illinois law, and he did not see why Spoor should lie about it. There was some parleying as to the amount that should be paid the physician who attended him, and the amount finally settled upon was $225 for the plaintiff and $100 for the physician, which sums were accepted and the release executed. Plaintiff says that while Spoor was writing something, presumably the release or a check, he (plaintiff) remarked "it was kind of early for a man to settle with his back broke;" that Spoor replied that plaintiff's back was not broken, and that plaintiff then asked the doctor about it, but received no reply. Plaintiff further stated that he did not know whether he signed the release or not; that he had no remembrance of its having been read to him; that he knew his wife cashed a check for $225 the next day, but supposed it was for sixty-five per cent. of his wages under the Wisconsin law.

Spoor testified that the terms of settlement were discussed and agreed upon by himself and the plaintiff in the presence of plaintiff's wife and family physician, and that plaintiff was expressly informed that the release was a settlement in full and if signed plaintiff would not get anything more.

Dr. Leitzel testified that he did not tell plaintiff that he would be able to resume work in eight weeks; that he did say that if plaintiff continued to improve at the rate he had been improving he would be around in eight weeks, but that complications might set in, and that he did not advise plaintiff to make a settlement; that the statement he made about plaintiff's condition was an honest expression of opinion, and that

,complications did set in which rendered the plaintiff's injury much more serious than he supposed it would prove when the settlement was made; that the terms of settlement were discussed and he thought plaintiff understood what he was talking about; that he seemed natural to the witness.

Had the jury answered the second question in the special verdict in the affirmative, the case would present a very different aspect from what it now presents. The jury has on sufficient evidence negatived fraud in the transaction which resulted in the settlement. Compromise settlements are favored in the law when fairly made. The signing of an instrument raises a strong presumption that its contents are understood, and such presumption is not overcome by a mere statement of the signer that he did not understand the nature of the document which he signed. *Schweikert v. John R. Davis L. Co.* 147 Wis. 242, 249, 133 N. W. 136; *Ross v. Northrup, King & Co.* 156 Wis. 327, 336, 144 N. W. 1124; *Albrecht v. M. & S. R. Co.* 87 Wis. 105, 58 N. W. 72; *Conant v. Estate of Kimball,* 95 Wis. 550, 70 N. W. 74; *Jackowski v. Ill. S. Co.* 103 Wis. 448, 79 N. W. 757; *Kowalke v. Milwaukee E. R. & L. Co.* 103 Wis. 472, 79 N. W. 762; *Deering v. Hoeft,* 111 Wis. 339, 87 N. W. 298.

It is true the plaintiff says that he was and had been suffering a great deal of pain and that he had been taking morphine to relieve it. But he also says Spoor told him that he was there to settle with him, and that he refused to settle until his family physician was present. He details the conversation that took place, and after the amount to be paid was agreed upon he expressed some doubt as to whether he should settle or not until he knew more about the extent of his injuries. In fact he details what took place up to the time the agreement was arrived at and says his mind was a blank only when it came to actually signing the release which was prepared to carry out the contract on which the minds of the parties had met. When we consider the plaintiff's evidence

in connection with that given by Spoor and Dr. Leitzel, it seems clear that the release was not impeached, if we are to follow the cases above cited and many others of like tenor and effect which are not cited but which are referred to in those that are.

*By the Court.*—Judgment affirmed.