Mark A. JELINEK, as special administrator for Cynthia M. Jelinek, deceased; Julie Jelinek, Matthew Jelinek and Jonathan Jelinek, minors, By Daniel D. Whetter, their Guardian ad Litem, Plaintiffs-Respondents,

v.

The ST. PAUL FIRE & CASUALTY INSURANCE COMPANY, a Wisconsin Corporation and Bellin Memorial Hospital, Inc., a Wisconsin Corporation, Defendants-Appellants.

Supreme Court

*No. 92–1858. Oral argument January 11, 1994.—Decided March 14, 1994.*

(Also reported in 512 N.W.2d 764.)

For the defendants-appellants there were briefs by *Terence J. Bouressa, Donald L. Romundson* and *Liebmann, Conway, Olejniczak & Jerry, S.C.,* Green Bay and oral argument by *Gregory B. Conway.*

For the plaintiffs-respondents there was a brief by *Daniel D. Whetter* and *Whetter Law Offices,* Green Bay and oral argument by *Gerald J. Bloch.*

Amicus curiae brief was filed by *Gerald J. Bloch* and *Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt &*

*Bloch, S.C.,* Milwaukee for the Wisconsin Academy of Trial Lawyers.

STEINMETZ, J. This case presents two issues for review:

1) In a medical malpractice action involving death that is commenced after January 1, 1991—when the limitation on damages from secs. 655.017[1] and 893.55(4),[2] Stats., expired—is a plaintiff's recovery for

---

[1] Section 655.017, Stats., provides as follows:

**655.017 Limitation on noneconomic damages.** The amount of noneconomic damages recoverable by a claimant or plaintiff under this chapter for acts or omissions of a health care provider if the action is filed on or after June 14, 1986 and before January 1, 1991, and for acts or omissions of an employe of a health care provider, acting within the scope of his or her employment and providing health care services, for actions filed on or after June 14, 1986 and before January 1, 1991, is subject to the limit under s. 893.55(4).

[2] Section 893.55(4), Stats., provides in relevant part:

**893.55 Medical malpractice; limitation of actions; limitation of damages; itemization of damages.**

(4) (a) In this subsection, "noneconomic damages" means moneys intended to compensate for pain and suffering; humiliation; embarrassment; worry; mental distress; noneconomic effects of disability including loss of enjoyment of the normal activities, benefits and pleasures of life and loss of mental or physical health, well-being or bodily functions; loss of consortium, society and companionship; or loss of love and affection.

(b) The total noneconomic damages recoverable under ch. 655 for bodily injury or death, including any action or proceeding based on contribution or indemnification, may not exceed the limit under par. (d) for each occurrence from all health care providers and all employes of health care providers acting within the scope of their employment and providing health care services who are found negligent and from the patients compensation fund for any action filed on or after June 14, 1986 and before January 1, 1991.

. . ..

4

loss of society and companionship unlimited, or rather is this recovery limited to $50,000 by sec. 895.04,[3] of the wrongful death statute?

2) In a medical malpractice action involving death that is commenced after January 1, 1991, may the minor children of the patient who dies as a result of the malpractice maintain separate causes of action for loss of society and companionship when the patient is survived by a spouse who also brings a claim for loss of society and companionship?

We hold that: 1) A plaintiff's recovery for loss of society and companionship in a medical malpractice action involving death is unlimited; and 2) the minor children of the deceased patient may maintain separate causes of action for loss of society and

(d) The limit on total noneconomic damages for each occurrence under par. (b) shall be $1,000,000 for actions filed on or after June 14, 1986, and shall be adjusted by the director of state courts to reflect changes in the consumer price index for all urban consumers, U.S. city average, as determined by the U.S. department of labor, at least annually thereafter, with the adjusted limit to apply to awards subsequent to such adjustments.

[3] Section 895.04, Stats. (1989–90), provides in relevant part:

**895.04 Plaintiff in wrongful death action. (1)** An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs.

. . ..

**(4)** Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $50,000 for loss of society and companionship may be awarded to the spouse, children or parents of the deceased.

The legislature has since extended the limit on damages for loss of society to $150,000. However, the $50,000 limit was in effect at the time the plaintiffs filed this lawsuit.

5

companionship even when the decedent is survived by a spouse who also brings such a claim.

The relevant facts in this case are not in dispute. On May 13, 1990, Cynthia Jelinek fell to her death from a third floor window at Bellin Memorial Hospital (Bellin). She was a patient on Bellin's psychiatric ward at the time. Her husband, Mark Jelinek, and her three children (the children) brought this action for negligence against Bellin and its insurer, St. Paul Fire and Casualty Insurance Company (St. Paul) on January 3, 1991.[4] Mr. Jelinek and the children sought damages for, among other things, loss of society and companionship.

Bellin and St. Paul (collectively, the defendants) moved the trial court to dismiss the children's claims and to limit Mr. Jelinek's recovery for loss of society and companionship to $50,000. The defendants argued that because the $1 million cap on non-economic damages in medical malpractice actions expired, the wrongful death statute governs in malpractice actions involving death. Under the wrongful death statute, Mr. Jelinek's damages for loss of society and companionship are limited to $50,000. See sec. 895.04(4), Stats. In addition, the defendants argued that the children do not have a separate cause of action for wrongful death because the decedent is also survived by her spouse, Mr. Jelinek. See Hanson v. Valdivia, 51 Wis. 2d 466, 475, 187 N.W.2d 151 (1971); see also York v. National Continental Ins. Co., 158 Wis. 2d 486, 499, 463 N.W.2d 364 (Ct. App. 1990).

The circuit court for Brown county, the Honorable Richard G. Greenwood, denied the defendants' motions. First, the court held that when the cap on non-

___

[4] The $1 million cap on non-economic damages under secs. 655.017 and 893.55(4), Stats., expired on January 1, 1991.

6

economic damages in medical malpractice actions expired, such damages became unlimited. Next, the court held that under *Rineck v. Johnson,* 155 Wis. 2d 659, 671, 456 N.W.2d 336 (1990), *cert. denied,* 498 U.S. 1068 (1991), the children could maintain separate causes of action for loss of society and companionship.

A jury found Bellin causally negligent in Mrs. Jelinek's death and awarded Mr. Jelinek and each of the three children $50,000 in damages for loss of society and companionship, along with various economic damages. The circuit court left this award intact in its judgment of June 10, 1992.

The defendants paid the plaintiffs for all the plaintiffs' economic damages and for Mr. Jelinek's loss of society and companionship. In lieu of this payment, the plaintiffs stipulated to the dismissal of these claims. The defendants then appealed the remaining $50,000 awards to each of the children for the loss of society and companionship of their mother. The court of appeals certified the appeal to this court pursuant to sec. (Rule) 809.61, Stats. We accepted the certification and now affirm the judgment of the circuit court.

To determine whether there is a limit on a plaintiff's recovery for loss of society and companionship in a medical malpractice action involving death, we interpret secs. 655.017 and 893.55(4), Stats. "The interpretation of a statute is a question of law which this court may review without deference to the lower courts." *State v. Eichman,* 155 Wis. 2d 552, 560, 455 N.W.2d 143 (1990). "The objective in construing a statute is to discern the intent of the legislature . . . and the primary source to be used is the language of the statute itself." *Id.*

This court has previously construed the relevant statutory language. *See Rineck,* 155 Wis. 2d 659. In *Rineck,* "we conclude[d] that the $50,000 limitation under the general wrongful death provisions of sec. 895.04(4), Stats., is inapplicable to [an] action involving medical malpractice . . .. [T]he limitation established by sec. 895.04(4) was superseded in medical malpractice actions by virtue of the $1,000,000 limitation in sec. 893.55(4)." *Id.* at 668. However, the $1 million limitation in secs. 655.017 and 893.55(4) that this court relied on in *Rineck* expired on January 1, 1991—two days before the plaintiffs filed this lawsuit. The plain language of secs. 655.017 and 893.55(4), Stats., is now silent on the issue of damage caps. When a statute is silent on an issue, we look beyond its plain language to the history, context, subject matter, scope and object of the statute. *See In Interest of J.A.L.,* 162 Wis. 2d 940, 962–63, 471 N.W.2d 493 (1991).

All of the parties acknowledge that no legislative history directly addresses the issue at hand. The defendants do, however, advance the following argument based on the general history and context of damage caps in medical malpractice actions. First, they claim that prior to the enactment of secs. 655.017 and 893.55(4), Stats., in 1986, the wrongful death statute limited damages for loss of society and companionship in medical malpractice actions involving death. Then, as this court stated in *Rineck,* 155 Wis. 2d at 664, the $1 million limit in secs. 655.017 and 893.55(4) "supersede[d]" the $50,000 limit from sec. 895.04(4). And now that the $1 million limit has expired, the defendants argue that the non-economic damages in medical malpractice death actions are once again limited by sec. 895.04(4).

8

■

We reject the defendants' argument. No Wisconsin court has previously decided whether any damage cap applied to medical malpractice death actions between the enactment of ch. 655, Stats., in 1975 and the enactment of the $1 million limit in secs. 655.017 and 893.55(4) in 1986.[5] In *Rineck,* 155 Wis. 2d at 668, we only held that between June 14, 1986, and January 1, 1991, the $1 million cap applied to medical malpractice death actions. We now hold that after January 1, 1991, non-economic damages for medical malpractice actions involving death are unlimited.

The defendants have failed to take into account the objectives of ch. 655, Stats., that this court relied on in *Rineck.* We first noted that ch. 655 created a separate cause of action for medical malpractice. "Chapter 655, Stats., . . . established an exclusive procedure for the prosecution of malpractice claims . . .. Chapter 655 sets tort claims produced by medical malpractice· apart from other tort claims, and parties are conclusively presumed to be bound by the provisions of the chapter regardless of injury or death." *Rineck,* 155 Wis. 2d at 665.

■

The defendants' position would require this court to ignore the intent of the legislature and look outside

---

[5] The defendants place great weight on this court's use of the word "supersede" in *Rineck.* Defendants claim that by using the word "supersede" this court explicitly acknowledged that the wrongful death damage cap applied to medical malpractice death actions prior to June 14, 1986. However, the issue of damage caps in medical malpractice actions involving death prior to 1986 was not before this court in *Rineck.* We did not intend to address that issue when we chose the word "supersede."

of ch. 655, Stats., to find a cap on non-economic damages. We explicitly rejected this approach in *Rineck.* "Significantly, ch. 655, Stats., does not state that damages recoverable in medical malpractice cases are also subject to the $50,000 limitation under the general wrongful death provisions of sec. 895.04(4). Had the legislature desired to appropriate the more restrictive damage limits of sec. 895.04(4) it would have provided so explicitly as it did in other instances . . .. We do not believe that the legislature would have taken pains to specifically refer to particular statutes . . . if it intended to incorporate without mention other miscellaneous general provisions, such as sec. 895.04(4)." *Id.* at 666–67.

The defendants point out that ch. 655, Stats., cannot exist in a vacuum because it does not address all aspects of civil litigation. For example, ch. 655 contains no statute of limitations. The defendants are correct that courts must apply a statute of limitations in medical malpractice cases. Accordingly, in medical negligence cases, such as this, courts apply the three-year statute of limitations from sec. 893.55(1). And recently, the court of appeals, after acknowledging that "[c]hapter 655 actions cannot stand in a statute of limitations vacuum; obviously, some statute of limitations must apply," applied the two-year statute of limitations for intentional torts from sec. 893.57 in a case involving sexual misconduct by a doctor. *See Deborah S.S. v. Yogesh N.G.,* 175 Wis. 2d 436, 442, 499 N.W.2d 272 (Ct. App. 1993). The defendants claim that ch. 655 actions also cannot stand in a damage cap vacuum. According to the defendants, now that ch. 655 is silent regarding a cap on damages for loss of society and companionship in medical malpractice death cases, courts should look to sec. 895.04(4) to find a damage cap.

10

The defendants fail to note that while a statute of limitations must apply to all civil actions, the same cannot be said for damage caps. In fact, unless the legislature has said otherwise, damages are generally unlimited in civil actions. Hence, if we do not find legislative intent to the contrary, there is no reason for this court to look beyond the confines of ch. 655 to find a damage cap to impose in this case.

In *Rineck*, 155 Wis. 2d at 668, we noted a second objective of ch. 655, Stats., to treat medical malpractice claims involving injury and death the same. "Grafting the wrongful death statute's verdict reduction procedure onto ch. 655, Stats., would also create different substantive rights in .cases involving injury and those involving death, contrary to the express legislative intention to treat medical malpractice claims involving 'injury or death' in exactly the same manner." *Id.* The defendants do not dispute the fact that after the damage cap in secs. 655.017 and 893.55(4) expired, non-economic damages for *injuries* caused by medical malpractice became unlimited. Thus, their argument that these same damages for *deaths* caused by medical malpractice should be limited to $50,000 directly contravenes the legislature's objective, to treat claims for injury and death in exactly the same manner.

Although the cap on non-economic damages in medical malpractice claims has expired, these two legislative objectives for enacting ch. 655, Stats.—to set tort claims resulting from medical malpractice apart from other tort claims and to treat medical malpractice claims for injury and death in exactly the same manner—remain valid. If we were to accept the defendants' position that the wrongful death damage cap should apply in this case, we would be ignoring the legislature's clear intent.

11

The defendants' position would also lead to an absurd result. We have already held that secs. 655.017 and 893.55(4), Stats., placed a $1 million cap on non-economic damages for medical malpractice death cases between 1986 and 1991. Section 893.55(4)(d) even requires the director of state courts to increase this limit to reflect changes in the consumer price index. It would indeed be absurd to now find that the legislature intended to abruptly reduce this damage cap by 95 percent when the legislation expired in 1991. This court will not construe a statute so as to work absurd or unreasonable results. *Estate of Evans,* 28 Wis. 2d 97, 101, 135 N.W.2d 832 (1965). Therefore, we reject the defendants' argument and hold that in a medical malpractice action involving death, a plaintiff's recovery for loss of society and companionship is unlimited.[6]

---

[6] The defendants briefly allude to an equal protection challenge to ch. 655, Stats., in their brief. This argument is addressed more thoroughly in the court of appeals brief of *amicus curiae* the Civil Trial Counsel of Wisconsin (the CTCW). The CTCW claims that if ch. 655 allows unlimited recovery for loss of society and companionship in malpractice cases involving death, it violates the equal protection clauses of both the United States Constitution and the Wisconsin Constitution by treating defendants in medical malpractice death actions differently from defendants in other wrongful death actions.

The plaintiffs argue that this court should not address this issue because the defendants failed to raise it before the trial court. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980). While this court may, in its discretion, address constitutional issues raised for the first time on appeal, *State v. Yellow Freight System, Inc.,* 101 Wis. 2d 142, 158, 303 N.W.2d 834 (1981), we decline to do so here. The defendants have offered no compelling reason for this court to address this issue and the parties have not adequately briefed the issue. *See id.*

12

We now address the damages that the jury awarded to the children. The circuit court allowed the children to maintain separate causes of action for the loss of the society and companionship of their mother even though Mrs. Jelinek is survived by her husband. The defendants ask this court to apply sec. 895.04(4), Stats., of the wrongful death statute in this case to prevent the children from recovering separate damages. "[S]urviving children do not have a cause of action for the wrongful death of one of their parents when the decedent is survived by his or her spouse . . .." *Hanson,* 51 Wis. 2d at 475.

We reject the defendants' argument. This court has already addressed this issue in *Rineck,* 155 Wis. 2d at 671, where we held that "sec. 895.04(2) does not prevent a minor child from maintaining a cause of action for loss of society and companionship when medical malpractice causes the death of a parent." We stressed that "the legislature intended to set medical malpractice cases involving death apart from other death cases to which the general wrongful death statute applies." *Id.*

In reaching this result in *Rineck,* we did not rely on the now-expired damage cap in secs. 655.017 and 893.55(4), Stats., as the defendants suggest. Rather, this court based its holding on sec. 655.007,[7] a section of the statutes that still exists, and the common law. *See id.* at 670–71; *See also Theama v. City of Kenosha,* 117 Wis. 2d 508, 527, 344 N.W.2d 513 (1984). Hence,

---

[7] Section 655.007, Stats., provides:

**655.007 Patients' claims.** On and after July 24, 1975, any patient or the patient's representative having a claim or any spouse, parent or child of the patient having a derivative claim for injury or death on account of malpractice is subject to this chapter.

13

the holding in *Rineck,* that minor children may maintain separate causes of action for loss of society and companionship even if their deceased parent is survived by his or her spouse, remains valid today. We therefore hold that in a medical malpractice action involving death commenced after January 1, 1991, the minor children of the decedent may maintain separate causes of action for loss of society and companionship when the decedent is survived by a spouse who also brings a claim for loss of society and companionship.

■

We find that the trial court correctly determined that in a medical malpractice action involving death, non-economic damages are unlimited and the minor children of the deceased patient may maintain separate causes of action for loss of society and companionship even when the deceased patient is survived by a spouse. Hence, we affirm the judgment of the circuit court.

*By the Court*—The judgment of the circuit court for Brown county is affirmed.

JUSTICE JANINE P. GESKE, took no part.