WISCONSIN PATIENTS COMPENSATION FUND, Plaintiff-Appellant,

v.

WISCONSIN HEALTH CARE LIABILITY INSURANCE PLAN, Defendant-Respondent.

Supreme Court

*No. 95–0865. Oral argument February 28, 1996.—Decided May 8, 1996.*

(Also reported in 547 N.W.2d 578.)

600

For the plaintiff-appellant there were briefs (in the court of appeals) by *Timothy J. Muldowney, James A. Friedman* and *LaFollette & Sinykin*, Madison and *James M. Fergal, Linda Vogt Meagher* and *Schellinger & Doyle, S.C.*, Brookfield and oral argument by *Timothy J. Muldowney.*

For the defendant-respondent there was a brief (in the court of appeals) by *Mary K. Wolverton, Peter F. Mullaney* and *Peterson, Johnson & Murray, S.C.*, Milwaukee and oral argument by *Mary K. Wolverton.*

Amicus curiae brief was filed by *David M. Skoglind, Edward E. Robinson* and *Wisconsin Academy of Trial Lawyers*, Milwaukee for Wisconsin Patients Compensation Fund.

SHIRLEY S. ABRAHAMSON, J.   This case is before the court on appeal from an order of the Circuit Court for Milwaukee County, Frank T. Crivello, judge, granting summary judgment to the defendant, the Wisconsin Health Care Liability Insurance Plan (WHCLIP), and dismissing the complaint of the Wisconsin Patients Compensation Fund (the Fund). The court granted the Fund's petition to bypass the court of appeals. Wis. Stat. § (Rule) 809.60(4) (1993-94).[1] We

---

[1] Unless otherwise noted, all further references are to the 1993-94 volume of the Wisconsin statutes.

reverse the order granting summary judgment in favor of WHCLIP and remand the cause to the circuit court.

The primary issue presented is the Fund's authority to sue a health care provider's insurer (here WHCLIP) when the Fund settles a malpractice action against the provider and the provider's insurer refuses to pay any sum toward the settlement. Should we conclude that the Fund has the authority to sue the provider's insurer, we must also address WHCLIP's contention that the complaint in this case should be dismissed on one of three alternative grounds: (1) the Fund fails to state a claim upon which relief can be granted for contribution, indemnification or legal subrogation; (2) the Fund's claim for contribution is barred by the statute of limitations; and (3) the Fund's board of governors has a conflict of interest which bars it from suing WHCLIP.

The circuit court concluded that the Fund has no authority to initiate the suit. In contrast, two Dane County circuit courts have held that the Fund does have authority to initiate an action against a provider's insurer in circumstances similar to those presented by this case.[2]

We conclude (1) that the Fund has the authority to sue a health care provider's insurer and (2) that the complaint states a claim for legal subrogation when the Fund settles a malpractice action against a health care provider and the provider's insurer refuses to make payment toward the settlement.

---

[2] *Wisconsin Patients Compensation Fund v. Physicians Ins. Co.*, Case No. 93-CV-0518, Sept. 22, 1993 (Judge Richard J. Callaway); *Wisconsin Patients Compensation Fund v. Physicians Ins. Co.*, Case No. 95-CV-0171, Dec. 13, 1995 (Judge Sarah B. O'Brien).

## I.

For purposes of this appeal the facts are not in dispute. On January 3, 1991, Andrea Singer, by her guardian ad litem and her parents, filed a medical malpractice action against Dr. John J. Massart, Dr. Thomas Mahoney and their respective insurers, Physicians Insurance of Wisconsin, Inc. and WHCLIP, as well as the Fund. The Singers claimed that the negligence of doctors Mahoney and Massart caused serious physical injury to Andrea during her birth.

The Singers' initial $5 million settlement offer was rejected. Prior to trial the Fund negotiated a settlement with the Singers for $1.9 million. In return, the Singers executed a general release and indemnification agreement releasing all of their claims against all of the defendants. The agreement included a provision preserving any claims that the Fund might have for contribution or indemnification against the other defendants. In the order dismissing the Singers' claim, the parties stipulated to the Fund's preservation of any claims for contribution or indemnification which it might have. Neither WHCLIP nor Dr. Mahoney objected to any of the terms of the agreement or stipulation. Together with the other defendants, they signed the stipulation in May 1993 and the circuit court signed the dismissal order in June 1993.

While Physicians Insurance contributed $300,000—representing Dr. Massart's policy limit—toward the settlement, WHCLIP refused to make any monetary contribution on behalf of Dr. Mahoney. On June 3, 1993, the Singers received a total of $1.9 million from the settling defendants: $300,000 from Physicians Insurance and $1.6 million from the Fund. The Fund filed this action on May 31, 1994, seeking $300,000 from WHCLIP. The circuit court

entered an order granting WHCLIP's motion for summary judgment and dismissing the Fund's action on its merits.

## II.

We first set forth the standard of review in this appeal. In reviewing an order granting summary judgment, an appellate court applies the same standards set forth in Wis. Stat. § 802.08 as does a circuit court. *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995).

The issues presented on summary judgment in this case are the nature and scope of the Fund's authority and whether the complaint states a claim upon which relief may be granted. Both are issues of law. Because the Fund is a legislatively created entity, determining the nature and scope of its authority requires an interpretation of the statute conferring that authority. Interpretation of statutes is ordinarily a question of law which this court reviews *de novo,* benefitting from the analyses of the circuit court and court of appeals.[3] Determining whether the complaint states a claim upon which relief may be granted is also a question of law for this court.

## III.

Before turning to the issues presented, we briefly examine the statutes creating the Fund and WHCLIP.

[3] While a circuit court opinion is not "binding precedent or authority," this Court may rely on it "for any persuasiveness that might be found in [its] reasoning and logic." *Brandt v. LIRC*, 160 Wis. 2d 353, 365, 466 N.W.2d 673 (Ct. App. 1991).

The Fund was created by the legislature in 1975 in response to a perceived medical malpractice crisis.[4] Concerned about what it viewed as the increasing cost and possible decreasing availability of health care in Wisconsin, the legislature promulgated a new system for processing medical malpractice claims. § 1, ch. 37, Laws of 1975.

As part of this statutory scheme, the legislature established the Fund with the intention that it would finance a portion of the liability incurred by health care providers in medical malpractice actions. Health care providers are required to assume financial responsibility for a limited portion[5] of any malpractice claim filed against them, either by purchasing liability insurance, self-insuring, or posting a cash or surety bond. Wis. Stat. § 655.23(3).

Health care providers must also pay annual assessments to the Fund. Wis. Stat. § 655.27(3). From these assessments the Fund pays the portion of a successful claim against a health care provider in excess of either the amount of coverage mandated by the statute or the coverage which a provider actually carries, whichever is greater. Wis. Stat. § 655.27(1).

WHCLIP was established as Wis. Stat. § 619.04 (1975) by the same law that created the Fund. § 9, ch. 37, Laws of 1975. WHCLIP is a mandatory risk-shar-

---

[4] *See State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 533-34, 261 N.W.2d 434 (1978) (Abrahamson, J., dissenting) (quoting *Wisconsin's Medical Malpractice Crisis, in* A Legislator's Guide to the Medical Malpractice Issue, The National Conference of State Legislatures (1976)).

[5] The amount for which health care providers are liable and must be insured is established by Wis. Stat. § 655.23(4). On July 4, 1987, when the injury in this case occurred, the minimum coverage level was $300,000 per occurrence.

ing plan providing insurance to health care providers who are unable to obtain coverage in the voluntary market. The statute creates a board of governors charged with oversight of WHCLIP.

Malpractice claimants seeking damages in excess of the amount for which the health care provider is responsible must name the Fund as a defendant, and the Fund "may appear and actively defend itself" in the ensuing litigation. Wis. Stat. § 655.27(5)(a)3. The Fund is "held in trust," Wis. Stat. § 655.27(6), and the same board of governors charged with overseeing WHCLIP is charged with the Fund's management.

In 1985 the legislature amended chapter 655[6] requiring that insurers and health care providers "shall act in good faith and in a fiduciary relationship with respect to any claim affecting the fund." Wis. Stat. § 655.27(5)(b) and (c). At the same time the legislature expressly authorized the board of governors of the Fund to "bring an action against an insurer, self-insurer or health care provider for failure to act in good faith or breach of fiduciary responsibility under sub. (5)(b) or (c)." Wis. Stat. § 655.27(7).

## IV.

Chapter 655 does not expressly authorize the Fund to initiate an action against an insurer when the Fund settles an action against a health care provider and the provider's insurer refuses to pay any sum toward the settlement. WHCLIP argues that the 1985 statutory grant of power allowing the Fund to initiate an action against an insurer is limited by its express terms to those occasions when the Fund states a claim

[6] 1985 Wis. Act 340.

that an insurer has acted in bad faith or breached its fiduciary responsibility toward the Fund.

█

The circuit court concluded that the Fund's authority to sue an insurer is limited to the two types of actions specifically enumerated in Wis. Stat. § 655.27(7). The circuit court reached its conclusion by relying upon the canon of statutory construction *expressio unius est exclusio alterius*, which instructs that when a statute expressly mentions one matter, all matters not mentioned in the statute are thereby excluded.[7] Because the Fund's claim in this case alleges neither cause of action specified in Wis. Stat. § 655.27(7), the circuit court concluded that the Fund does not have the authority to initiate an action in this case.

Both this court and the court of appeals have in several cases used the *expressio unius* canon of construction as a guide to interpreting statutes.[8] But in

---

[7] The circuit court stated:

> [B]y granting the Fund certain powers the legislature was withholding powers not enumerated. Had the legislature wanted the Fund to have all the rights to sue and be sued that any other legal person has, it would have said so. Nothing in section 655.27 provides the Fund with the authority to prosecute this type of action. By failing to provide the Fund with such powers, the Fund lacks the authority to prosecute this action; and accordingly, the defendant's motion for summary judgment is granted.

The circuit court judge also declared that while he was "finding for the defendant, I think this is an absurd result." The circuit judge did not explain why he was deploying the *expressio unius* canon while not deploying the canon that statutes are not to be construed so as to produce absurd results. *See, e.g., State v. Peete*, 185 Wis. 2d 4, 17, 517 N.W.2d 149 (1994).

[8] *See, e.g., Lang v. Lang*, 161 Wis. 2d 210, 224, 467 N.W.2d 772 (1991); *C.A.K. v. State*, 154 Wis. 2d 612, 621, 453 N.W.2d

numerous other cases, the court has warned that the *expressio unius* canon "requires caution in its application." *See, e.g., Whitaker v. State*, 83 Wis. 2d 368, 374, 265 N.W.2d 575 (1978).

Before the canon is deployed, the court has stated, "[t]here must be some factual evidence that the legislature intended the application of the *expressio unius* rule." *State v. Engler*, 80 Wis. 2d 402, 408, 259 N.W.2d 97 (1977). For while the canon may be based upon "logic and the working of the human mind," it is not a " 'Procrustean standard to which all statutory language must be made to conform.' " *Columbia Hosp. Ass'n v. Milwaukee*, 35 Wis. 2d 660, 669, 151 N.W.2d 750 (1967) (quoting *State ex rel. West Allis v. Milwaukee Light, Heat & Tractor Co.*, 166 Wis. 178, 182, 164 N.W. 837 (1917)).[9]

WHCLIP has offered no factual evidence that the legislature intended the application of the *expressio unius* canon, and our review of the legislative history

---

897 (1990); *Gottlieb v. Milwaukee*, 90 Wis. 2d 86, 95, 279 N.W.2d 479 (Ct. App. 1979).

[9] *See also Bothum v. Dep't of Transp.*, 134 Wis. 2d 378, 381-82, 396 N.W.2d 785 (Ct. App. 1986); Norman J. Singer, 2A *Sutherland Statutory Construction* 47.25 (5th ed. 1991) (the *expressio unius* canon should be used with care and there should be some evidence that the legislature intended its application lest it prevail despite the reason for and spirit of an enactment); Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed*, 3 Vand. L. Rev. 395 (1950) (because almost every canon of construction can be countered by an opposing canon, canons of construction cannot themselves be dispositive in interpreting a statute).

reveals none. We therefore decline WHCLIP's invitation to apply it here.[10]

Instead we approach the interpretation of chapter 655 as we would approach the interpretation of any statute—with the object of discerning the intent of the legislature. *Harrington v. Smith*, 28 Wis. 43, 59 (1871).[11] In interpreting legislative intent, this court has declared that a legislatively created agency or board has those powers "which are, by necessity, to be

---

[10] WHCLIP raises an analogous argument when it asserts that chapter 655 is a comprehensive statute which the court has interpreted as excluding matters not incorporated therein. WHCLIP cites *Rineck v. Johnson*, 155 Wis. 2d 659, 456 N.W.2d 336 (1990), and *Jelinek v. St. Paul Fire & Cas. Ins. Co.*, 182 Wis. 2d 1, 11, 512 N.W.2d 764 (1994), as authority. These cases cannot, however, be read as broadly as WHCLIP suggests. As the court stated in *Jelinek*, the question of whether a court should look beyond the four corners of the statute it is construing requires an interpretation of what the legislature intended; if the legislature does not intend that the interpretation of a statute be limited to its express provisions, the court need not impose such a limitation on its own. *Id.* at 11. The *Jelinek* court also observed that chapter 655 "cannot exist in a vacuum because it does not address all aspects of civil litigation." *Id.* at 10.

[11] WHCLIP contends that its interpretation of Wis. Stat. § 655.27(7) is bolstered by language in Wis. Stat. § 655.27(6) stating that "[t]he fund . . . may not be used for purposes other than those of this chapter." This formulation, however, simply begs the question we are called upon to address: what the purposes of chapter 655 actually are. Should those purposes require that the Fund be permitted to sue health providers' insurers who refuse to contribute to a settlement in an action brought against their insureds, the Fund could bring such suits and nevertheless comply with Wis. Stat. § 655.27(6).

*implied* from the four corners of the statute under which it operates." *Racine Fire & Police Comm'n v. Stanfield*, 70 Wis. 2d 395, 399, 234 N.W.2d 307 (1975) (emphasis added).[12] The power to sue may be implied when the power "is necessary to carry out an express power or to perform an express duty, or [when] the action arises out of the performance of statutory powers or obligations . . . ." *Stanfield*, 70 Wis. 2d at 402.

As WHCLIP points out, this court has held that "any reasonable doubt as to the existence of an implied power in an agency should be resolved against the exercise of such authority." *State Public Intervenor v. Dep't of Natural Resources*, 177 Wis. 2d 666, 675, 503 N.W.2d 305 (Ct. App. 1993), (quoting *Kimberly-Clark Corp. v. Neenah*, 110 Wis. 2d 455, 462, 329 N.W.2d 143 (1983) (emphasis omitted)). WHCLIP therefore contends that the statute should not be interpreted to confer upon the Fund an implied power to sue insurers failing to contribute to a settlement. For the reasons we now set forth, however, we conclude that there is no reasonable doubt that the legislature intended the Fund to have this right.

Should the Fund not be authorized to bring such suits, its monies would be used for purposes other than those set forth in chapter 655, thereby violating the legislature's command that "the fund . . . may not be used for purposes other than those of this chapter." Wis. Stat. § 655.27(6).

---

[12] *See also Teubert v. Wisconsin Interscholastic Athletic Ass'n*, 8 Wis. 2d 373, 99 N.W.2d 100 (1959) (an express statutory provision is not indispensable to an unincorporated association's capacity to sue or be sued, since such a suit may be maintained by virtue of a necessary implication arising from statutory provisions).

The Fund is expressly obliged to pay only "that portion of a medical malpractice claim which is *in excess* of the limits expressed in s. 655.23(4) . . . ." Wis. Stat. § 655.27(1) (emphasis added). In other words, the Fund's liability begins only after a health care provider's statutorily mandated liability coverage limits are exceeded.

If the Fund were not permitted to sue an insurer to recover monies spent on a settlement payment, the Fund's assets would be used to pay an insured's statutorily mandated coverage rather than to pay only that portion of a successful claim exceeding the insured's mandated coverage. The Fund would therefore be used for purposes other than those set forth in chapter 655.

In this case, the Fund settled a medical malpractice claim for an amount in excess of the limits expressed in Wis. Stat. § 655.23(4). WHCLIP contributed nothing toward the settlement, forcing the Fund to pay the statutorily mandated insurance limit of WHCLIP's insured, or $300,000, in addition to that portion of the settlement exceeding the insured's coverage. Such a payment by the Fund contravenes the express language of the statute and therefore violates Wis. Stat. § 655.27(6).

Conceding that the Fund cannot pay the statutorily mandated insurance limit prescribed by Wis. Stat. § 655.23(4), WHCLIP contends that the Fund should be allowed to settle only that portion of a medical malpractice claim exceeding those coverage limits. According to WHCLIP, once the Fund had decided that the entire claim in this case was worth $1.9 million, it should have paid the claimants $1.3 million, allowing the two health care providers' insurers to decide for themselves whether they would join the settlement by paying their insureds' statutorily mandated coverage

of $300,000 each. After WHCLIP had elected not to settle on behalf of its insured, the claimants could have proceeded against WHCLIP and its insured for $300,000. There are serious flaws in WHCLIP's position. Claimants will be reluctant to settle with the Fund if they know that they must still negotiate with or litigate against other parties in order to receive full compensation. In this case, the Singers settled for $1.9 million after initially offering to settle for $5 million. They likely would not have been willing to settle for $1.3 million and the right to pursue the remaining defendants.

Furthermore, adopting WHCLIP's suggested approach would give providers and their insurers additional disincentives to settling claims. As WHCLIP itself acknowledged both in its brief and during oral argument before the court, one disincentive is the statutory requirement that settlements of malpractice cases against physicians be reported to the medical examining board. Wis. Stat. § 655.26. A second disincentive to settlement is the fact that regardless of whether an insurer litigates or settles, its liability is capped by Wis. Stat. § 655.23(4). In trying a case, an insurer's liability will not exceed the statutory cap, and it may pay less. A third disincentive to settlement is the prospect that a claimant may not continue to seek recovery from a health care provider and the provider's insurer once the Fund has settled a claim.

In contrast, the Fund has a strong incentive to settle. Because it is liable for any excess over the mandatory coverage limits, the Fund often has the most at risk if a case should proceed to trial. In this case, for example, the Fund would face the risk that a jury could award the claimants significantly more than $1.9 million, leaving the Fund liable for the entire

amount in excess of $600,000. Litigation increases the Fund's financial exposure and threatens the Fund's solvency.[13]

If the Fund is to perform its statutory functions effectively, then, the statute which created the Fund should be interpreted as authorizing the Fund to bring an action against an insurer that refuses to contribute to a settlement in a claim against its insured.

This interpretation is further bolstered by the fact that it promotes a clear statutory directive. Wisconsin Stat. § 655.27(6) directs that the Fund "shall be held in trust for the purposes of this chapter." To be able to pay its portion of medical malpractice claims the Fund must act to ensure its solvency and to protect the integrity of its assets. Bringing suit against insurers for their portion of a settlement allows the Fund to better safeguard its resources.

As the court stated in *State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 261 N.W.2d 434 (1978), the board of governors charged with managing the Fund is endowed with the requisite authority to perform all of the functions of trustees under the common law of trusts. A trustee, decreed the *Strykowski* court, has the power and duty "to institute action and proceedings for the protection of the trust estate . . . and to take all legal steps . . . reasonably necessary with relation to those objectives." *Strykowski*, 81 Wis. 2d at 518 (quot-

---

[13] WHCLIP's interpretation of the statute would make settlement more difficult, thereby conflicting with "long-standing policy in favor of settlements." *See, e.g., Collins v. American Family Mut. Ins. Co.*, 153 Wis. 2d 477, 490, 451 N.W.2d 429 (1990); *Radlein v. Industrial Fire Cas. Ins. Co.*, 117 Wis. 2d 605, 622, 345 N.W. 2d 874 (1984); *Shilling v. Milwaukee Bedding Co.*, 197 Wis. 250, 256, 221 N.W. 743 (1928); *Rayborn v. Galena Iron Works Co.*, 159 Wis. 164, 169, 149 N.W. 701 (1914).

ing *Brisnehan v. Central Bank and Trust Co.*, 134 Colo. 47, 51, 52 (1956)). *Strykowski* therefore supports the proposition that the Fund's board of governors, as trustees under Wis. Stat. § 655.27(6), may bring an action against a health care provider or an insurer if the board determines that such an action is needed to protect the Fund.

The history of the statute and the Fund further supports interpreting the statute as permitting the Fund to sue insurers. The limited legislative history accompanying the 1985 amendments suggests that Wis. Stat. § 655.27(7), authorizing the Fund to bring an action alleging an insurer's bad faith, was simply created as a specific mechanism for the Fund to enforce the other 1985 amendment, Wis. Stat. § 655.27(5)(b) and (c), creating a statutorily mandated obligation requiring insurers to act in good faith toward the Fund.[14] Prior to the 1985 amendments the Fund had exercised the authority to sue insurers.[15] Nothing in the legislative history indicates that the 1985 amend-

---

[14] *See* Wis. Stat. § 627.27(5) and (7); Analysis by the Legislative Reference Bureau of 1985 Wis. Act 340, LRB-5441/2 (May 1986). *See also* David A. Saichek, *A Summary of the New Statutes Governing Medical Malpractice*, Wis. Bar Bull., Oct. 1986, at 8.

[15] *Wisconsin Patients Compensation Fund v. Continental Cas. Co.*, 122 Wis. 2d 144, 361 N.W.2d 666 (1985) (Fund sued insurer for contribution because insurer, arguing that its insured doctor was not negligent, refused to pay its portion of a claim); *Wisconsin Patients Compensation Fund v. St. Paul & Marine Ins. Co.*, 116 Wis. 2d 537, 342 N.W.2d 693 (1984) (Fund sought a declaratory judgment requiring insurer to pay the Fund the entire value of its policy before the Fund would be liable to pay claims in excess of its policy limit); *Wisconsin Patients Compensation Fund v. St. Paul Fire & Marine Ins. Co.*, 119 Wis. 2d 41, 349 N.W.2d 719 (Ct. App. 1984).

ments were intended to eliminate the Fund's power to bring other actions, and we will not read such a limitation into the statute.

Finally, providing the Fund with the power to sue an insurer that refuses to contribute to the settlement of a claim against its insured simply leaves WHCLIP in the same position that it would be in were we to rule that the Fund did not have such a power. In either case, WHCLIP faces the prospect of a suit alleging its insured's negligence. Whether that suit is brought by the Fund or by a claimant, the party adverse to WHCLIP must prove the insured's liability before WHCLIP can be held liable. As the Wisconsin Academy of Trial Lawyers points out in its amicus brief, an interpretation of chapter 655 authorizing the Fund to bring suit against an insurer for settlement monies gives non-settling insurers what they had wanted in the first place: a trial on the merits to determine the liability of their insureds.

During oral argument, WHCLIP asserted that a suit alleging its insured's negligence brought by the Fund would be qualitatively different from the same suit brought by a claimant. According to WHCLIP, the comparatively greater resources that the Fund could expend would place an insurer at a relative disadvantage. Essentially, then, WHCLIP is saying that it would prefer to litigate against an individual patient rather than against the Fund because an individual will ordinarily have less money to spend on legal services.

This argument is not compelling. Neither the language of the statute nor its legislative history reveals

None of these decisions ruled directly on the question of whether the Fund has the power to bring suit against an insurer for a portion of a settlement.

any legislative intent to shield health care providers and their insurers from liability for the providers' negligent acts when those bringing claims do not have adequate resources to fully litigate an action. Nor does the statute indicate that the legislature intended to protect insurers' resources at the expense of the Fund's integrity.

To read the statute as WHCLIP suggests would jeopardize the Fund while providing insurers and their health care providers with an unwarranted windfall. Conversely, reading the statute as we read it today helps insure that the Fund makes only those payments which the statute itself prescribes, promotes a statutory directive giving the Fund's board the powers of trustees, is consistent with the Fund's previous exercise of power and leaves insurers such as WHCLIP no worse off than they would be were suit to be brought by a claimant rather than by the Fund. We therefore hold that chapter 655 authorizes the Fund to sue an insurer that refuses to pay toward the settlement of an underlying medical malpractice claim against its insured.

## V.

WHCLIP contends that even should chapter 655 be interpreted as providing the Fund with the authority to sue an insurer that refuses to pay toward the settlement of a claim against its insured, WHCLIP is nevertheless entitled to summary judgment on this action. WHCLIP raises several alternative legal defenses to justify summary judgment in its favor.

First, WHCLIP asserts that the Fund's complaint fails to state a claim upon which relief can be granted. Second, WHCLIP argues that the Fund's contribution claim in this case is barred by the statute of limita-

tions. Third, WHCLIP argues that the decision by the Fund's board of governors to sue WHCLIP triggers a conflict of interest. Although these arguments did not form the primary basis for the circuit court's ruling, the circuit court adopted WHCLIP's positions because it found "them well reasoned, logical, and supported by law."

First, WHCLIP asserts that the Fund's complaint should be dismissed for failing to state a claim. The complaint states three alternative bases for its claim against WHCLIP: (1) contribution, (2) indemnification, and (3) legal subrogation.

We need not determine the validity of each theory of recovery, but rather must only determine whether the complaint states *a* claim upon which relief can be granted. If we conclude that the complaint states any basis upon which relief can be granted, summary judgment for the defendant is erroneous. *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 107, 280 N.W.2d 757 (1979)(citation omitted).

We conclude that the Fund's complaint has stated a claim upon which equitable relief may be granted under the theory of legal subrogation.[16] Unlike conventional, contractually based subrogation, so-called legal subrogation "has its source in equity and arises solely by operation and application of equitable principles." *American Ins. Co. v. City of Milwaukee*, 51 Wis. 2d 346, 351, 187 N.W.2d 142 (1971); *see also D'Angelo v. Cor-*

---

[16] Because we conclude that the Fund was entitled to bring a claim for legal subrogation, we need not address WHCLIP's arguments regarding contribution and indemnification. Nor need we address WHCLIP's argument that the Fund's contribution claim is barred by the statute of limitations.

*nell Paperboard Products Co.*, 19 Wis. 2d 390, 399-400, 120 N.W.2d 70 (1963). Derived from the equitable doctrine of preventing unjust enrichment, "it is applied when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *American Ins.*, 51 Wis. 2d at 351. It is not dependent upon either contract or privity, and "[i]t is proper in all cases to allow it where injustice would follow its denial." *Kennedy-Ingalls Corp. v. Meissner*, 5 Wis. 2d 100, 106, 92 N.W.2d 247 (1958) (quoting *Stroh v. O'Hearn*, 142 N.W. 865, 869 (Mich. 1913)); *American Ins.*, 51 Wis. 2d at 351.[17]

Subrogation is derivative of an injured person's right to recover from a tortfeasor. *American Standard Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 262, 369 N.W.2d 168 (Ct. App. 1985) (citing *Garrity v. Rural Mut Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512 (1977)). WHCLIP argues that the Fund has no subrogated right to sue based on WHCLIP's prospective liability to the Singers, because the settlement agreement signed by the Singers released WHCLIP from liability. Because the Singers no longer have any legal rights against

---

[17] Because the Fund was potentially liable to the Singers, its decision to settle with them in accordance with its statutory purpose and duty does not render it a "mere volunteer." In the case of *Rusch v. Korth*, 2 Wis. 2d 321, 86 N.W.2d 464 (1957), *overruled on other grounds, Farmers Mut. Auto Ins. Co. v. Milwaukee Auto Ins. Co.*, 8 Wis. 2d 512, 519, 99 N.W.2d 747 (1959), for example, we stated that an alleged tortfeasor who made payment to settle a claim and was subsequently found to be not negligent was not a volunteer. *Rusch*, 2 Wis. 2d at 327. *See also Perkins v. Worzala*, 31 Wis. 2d 634, 637-38, 143 N.W.2d 516 (1966) (because it was potentially liable, insurer making a settlement payment was not a volunteer).

WHCLIP or its insured, argues WHCLIP, neither does the Fund.

WHCLIP's argument cannot withstand close scrutiny. The court has previously held that when a third person discharges another's liability through an assignment or release, the party that would ultimately have been liable ought in good conscience to pay that third person. *D'Angelo*, 19 Wis. 2d at 400; *Kennedy-Ingalls Corp.*, 5 Wis. 2d at 104-05. This conclusion is bolstered by the Restatement of Restitution § 71(2) (1937), cited by both the *D'Angelo* and the *Kennedy-Ingalls* courts, which states that "[a] person who has paid the debt of another in response to the threat of civil proceedings by a third person, whether or not the third person is acting in good faith, is entitled to restitution from the other if the payor acted to avoid trouble and expense."

If WHCLIP's insured was negligent and WHCLIP is nevertheless absolved from paying its fair share of the settlement to the Fund, it would be unjustly enriched at the Fund's expense. We agree with the Fund that by denying subrogation rights here, we would encourage primary insurers such as WHCLIP to withhold payments toward a settlement in the hope that the Fund might pay first in the course of satisfying its statutory obligation. A primary insurer should not be able to shift its share of a burden to the Fund and thereby escape its contractual obligations under its policies.

WHCLIP is of course free at trial to contest the Fund's claim that its insured was negligent. But it cannot escape its possible obligations through summary judgment. The Fund's pleadings have satisfied the criteria for equitable relief, and we therefore con-

621

clude that the circuit court should not have granted summary judgment to WHCLIP.

Finally, WHCLIP argues that because the same board of governors is charged with the operation of both the Fund and WHCLIP, Wis. Stat. §§ 619.04, 655.001(1) and 655.27(2), it is a conflict of interest for the Fund to sue WHCLIP.

In its brief, WHCLIP acknowledges its inability to locate any authority suggesting that entities sharing a common board of governors cannot sue each other. Nor have we found any such authority, and we reject WHCLIP's invitation to reach such a conclusion here. No legal authority or factual evidence suggests any legislative intent to leave the parties in legal limbo or to leave unresolved the important issues which this case presents.

While the legislature has placed WHCLIP and the FUND under the management and control of the same board, they are distinct entities, characterized by different purposes and duties which are delimited by discrete statutes. We do not read this statutory scheme as prohibiting these two entities from litigating their differences and seeking clarification of their respective rights and duties when, as is the case here, those rights and duties are in conflict.[18]

Having concluded that the legislature's statutory scheme confers upon the Fund the authority to sue an

---

[18] During oral argument, WHCLIP's own counsel suggested that a suit brought by the Fund against WHCLIP limited to the causes of action enumerated in Wis. Stat. § 655.27(7) would be "appropriate." Viewed in the context of potential conflicts of interest, we fail to discern any distinction between an action brought by the Fund against WHCLIP under Wis. Stat. § 655.27 (7) and the action before us today.

622

insurer that refuses to contribute to the settlement of a claim against its insured, we see no reason why we should read into that statutory scheme a special exception shielding WHCLIP from suits that can be brought against any other medical liability insurer.

For the reasons set forth, we conclude that WHCLIP is not entitled to summary judgment. The circuit court's decision granting WHCLIP's motion for summary judgment is reversed and we remand this action to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded to the circuit court.

Justice Janine P. Geske did not participate.