WISCONSIN PATIENTS COMPENSATION FUND, Plaintiff-
Respondent,†

v.

PHYSICIANS INSURANCE COMPANY OF WISCONSIN, INC.,
Defendant-Appellant.

Court of Appeals

*No. 99–1322. Oral argument September 6, 2000.—Decided
October 3, 2000.*

**2000 WI App 248**

(Also reported in 620 N.W.2d 457.)

†Petition to review denied.

361

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John S. Skilton* and *Michael B. Van Sciklen* of *Foley & Lardner*, of Madison. There was oral argument by *John S. Skilton.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William H. Levit, Jr.* and *Michael B. Apfeld* of *Godfrey & Kahn, S.C.*, of Milwaukee. There was oral argument by *William H. Levit, Jr.*

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. The Physicians Insurance Company of Wisconsin, Inc., provides medical-malpractice insurance for approximately forty-percent of physicians practicing in Wisconsin. Under WIS. STAT. ch. 655, its coverage is primary, and the Wisconsin Patient's Compensation Fund provides excess coverage. WIS. STAT. § 655.27; *Patients Compensation Fund v. Lutheran Hospital-LaCrosse, Inc.*, 223 Wis. 2d 439, 452–453, 588 N.W.2d 35, 40 (1999) ("When a malpractice claim against a health care provider succeeds, the Fund pays the part of the claim which is in excess of either the amount of primary insurance coverage required by the statute or the amount of primary insurance coverage actually carried by the health care provider, whichever is greater.").

¶ 2. Physicians Insurance appeals from an order declaring that WIS. STAT. § 655.27(5)(b) means that lawyers retained by it and other medical-malpractice insurers in connection with an action to which WIS. STAT. ch. 655 applies must "assume[ ] an attorney-client relationship with the Fund" and that this "requires

that the Fund be provided with the timely transmission of all case evaluations, status reports, strategic recommendations and other substantive communications of defense counsel subject to the provisions of the Code of Professional Responsibility." Physicians Insurance also appeals from the trial court's declaration that restrictions imposed by Physicians Insurance on what lawyers hired by it to represent its insureds may reveal to the Fund are invalid. We reverse.

## I.

¶ 3. The liability of a "health care provider" in Wisconsin for medical malpractice is governed by WIS. STAT. ch. 655. *See Lutheran Hospital-LaCrosse*, 223 Wis. 2d at 452, 588 N.W.2d at 40. A "health care provider" is a person or entity within the scope of WIS. STAT. § 655.002. *See* WIS. STAT. § 655.001(8). Every "health care provider" must either have liability insurance or be a self-insurer. *See* WIS. STAT. § 655.23; *see also Lutheran Hospital-LaCrosse*, 223 Wis. 2d at 452 n.7, 588 N.W.2d at 40 n.7. Section 655.23 sets the minimum dollar-requirement for this insurance. As noted, the Fund, an agency created by the state, *Lutheran Hospital-LaCrosse*, 223 Wis. 2d at 454, 588 N.W.2d at 41, provides coverage for any difference between the health-care provider's primary insurance and an award of damages or settlement. The Fund's assets come from health-care provider assessments, *see* WIS. STAT. § 655.27(3), and are "held in trust for the purposes" of ameliorating any adverse affects of medical-malpractice claims on the provision of health care in this state, *see* WIS. STAT. § 655.27(6); *Wisconsin Patients Compensation Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 607, 547 N.W.2d 578, 580 (1996) (legislature enacted WIS. STAT. ch. 655 because it

was "[c]oncerned about what it viewed as the increasing cost and possible decreasing availability of health care in Wisconsin").

¶ 4. An insurance carrier providing primary coverage has a potential conflict with the Fund because the Fund can seek contribution from it as well as its insureds. *See Wisconsin Health Care Liab. Ins. Plan,* 200 Wis. 2d at 612–614, 547 N.W.2d at 583; *see also Lutheran Hospital-LaCrosse,* 223 Wis. 2d at 455, 588 N.W.2d at 41. Thus, in oral argument before the trial court in this case, counsel for the Fund conceded that, in what he termed "the most extreme situation," the Fund could "theoretically" "seek contribution against the doctor" insured by the primary carrier.

¶ 5. There are two parts of WIS. STAT. ch. 655 that are at play here. First, WIS. STAT. § 655.27(5)(b) requires the carrier providing the primary coverage "to provide an adequate defense of the fund on any claim filed that may potentially affect the fund," and to deal in good faith "with respect to any claim affecting the fund." Section 655.27(5)(b) provides:

> It shall be the responsibility of the insurer or self-insurer providing insurance or self-insurance for a health care provider who is also covered by the fund to provide an adequate defense of the fund on any claim filed that may potentially affect the fund with respect to such insurance contract or self-insurance contract. The insurer or self-insurer shall act in good faith and in a fiduciary relationship with respect to any claim affecting the fund. No settlement exceeding an amount which could require

payment by the fund may be agreed to unless approved by the board of governors.[1]

Simply put, the Fund may not be sandbagged by a carrier seeking to shift to the Fund liability that is properly borne by the carrier. Indeed, the legislature has specifically authorized the Fund to "bring an action against an insurer, self-insurer or health care provider for failure to act in good faith or breach of fiduciary responsibility under sub. (5)(b) or (c)" of § 655.27. WIS. STAT. § 655.27(7).

¶ 6. In addition to requiring that the primary insurance carrier "provide an adequate defense of the fund on any claim filed that may potentially affect the fund," and "act in good faith and in a fiduciary relationship with respect to any claim affecting the fund," WIS. STAT. § 655.27(5)(b), the legislature also authorizes the Fund to appear with its own counsel if "it appears reasonably probable" that the Fund will be responsible for part of a malpractice claim, WIS. STAT. § 655.27(5)(a)3. This section provides, as material to this appeal:

> If, after reviewing the facts upon which the claim or action is based, it appears reasonably probable that damages paid will exceed the limits in s. 655.23(4), the fund may appear and actively defend itself when named as a party in an action against a health care provider, or an employe of a health care provider, that has coverage under the fund. In such action, the fund may retain counsel and pay out of the fund attorney fees and expenses including court costs incurred in defending the fund. The attorney or law firm retained to defend the fund shall not be

---

[1] A similar provision applies where the health-care provider has posted a cash or surety bond in accordance with WIS. STAT. § 655.23(3)(d). *See* WIS. STAT. § 655.27(5)(c).

retained or employed by the board of governors to perform legal services for the board of governors other than those directly connected with the fund.

¶ 7. The dispute here centers around the attempt by Physicians Insurance to limit the scope of representation provided to the Fund by lawyers hired by Physicians Insurance to represent its insureds. The Fund contends that the statute's requirement that the primary carrier provide to the Fund an "adequate defense" means that the lawyer hired by the primary carrier to represent its insureds should also have a full attorney/client relationship with the Fund, and that it should be privy to all information gathered and strategy formulated by those lawyers. Physicians Insurance, on the other hand, contends that under the statute, as expressed in the parties' joint petition seeking to have the supreme court take original jurisdiction of this case, the lawyers retained by it are "permitted to withhold information from the Fund, including, but not limited to, confidential attorney-client information acquired from the health care provider and/or counsel's work product."[2]

## II.

¶ 8. This case was presented to the trial court on cross-motions for summary judgment, and there is no dispute about facts that are material to the resolution of this appeal. Our review of a trial court's grant of summary judgment is *de novo*. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). This appeal turns on what the perti-

---

[2] The supreme court denied the joint petition on August 24, 1998.

nent provisions in WIS. STAT. ch. 655 mean, and this, too, is a matter that we decide *de novo*. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–365, 560 N.W.2d 315, 317 (Ct. App. 1997).[3]

---

[3] The parties have submitted opinions by various persons whom the parties proffer as experts in legal ethics. Although a lawyer's obligations under the applicable legal ethics provide context and dimension to our statutory analysis, our analysis of all the legal issues is *de novo*; for better or for worse under our system the only "expert" on domestic law is the court. *See Succession of Allison*, 727 So. 2d 683, 684 n.1 (La. Ct. App. 1999); *Caplan v. Winslett*, 218 A.D.2d 148, 155 (N.Y. App. Div. 1996) ("trial court should not rely on the testimony of a legal expert on a question of domestic law, regardless of the witness' vast experience"); *Thorin v. Bloomfield Hills Bd. of Educ.*, 513 N.W.2d 230, 236 (Mich. Ct. App. 1994) ("Generally, expert witnesses may not testify with regard to domestic law because it is within the exclusive responsibility of the trial judge to find and interpret the applicable law."); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible. . . . [A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."), *overruled on other grounds by United States v. Mandancini*, 205 F.3d 519 (2nd Cir. 2000); *Music Sales Corp. v. Morris*, 73 F. Supp.2d 364, 381 (S.D.N.Y. 1999) ("testimony of an expert on matters of domestic law is inadmissible for any purpose"); *see also In Matter of Judicial Disciplinary Proceedings Against Tesmer*, 219 Wis. 2d 708, 726, 731, 580 N.W.2d 307, 315 (1998) *(per curiam)* (testimony by judges as to whether a judge violated judicial ethics inadmissible because proposed testimony went to "ultimate issue of law to be decided"; alternate holding—judges not called as expert witnesses and were not qualified as such); *cf. United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000) (in prosecution of lawyer for improper representation of client, expert testimony on lawyer's ethical obligations admissible to establish lawyer's intent and state of

¶ 9. In applying a statute, we must, absent a constitutional infirmity, effectuate the legislature's intent. *See Nelson v. McLaughlin,* 211 Wis. 2d 487, 495, 565 N.W.2d 123, 127 (1997). If the statutory language is clear, we simply apply it. *See DNR v. Wisconsin Power & Light Co.,* 108 Wis. 2d 403, 408, 321 N.W.2d 286, 288 (1982). Here, the parties dispute the meaning of the word "adequate" in the statute's command that the primary carrier give to the Fund "an adequate defense of the fund on any claim filed that may potentially affect the fund." WIS. STAT. § 655.27(5)(b). As noted, the Fund contends that this means that the lawyer hired by the primary carrier must treat the Fund as if the Fund were its client—giving to the Fund access to all information gleaned from the lawyer's investigation and analysis. Physicians Insurance, on the other hand, argues that this makes no sense for two reasons. First, it would prejudice its interests and the interests of the health-care provider for whom the lawyer was hired to represent by giving to the Fund ammunition that the Fund might later use in an action for contribution against either Physicians Insurance or its insured. Second, Physicians Insurance contends that there is a distinction between the legislature's command that it give to the Fund an "adequate defense on any claim filed that may potentially affect the fund," and the legislature's authorization for the Fund to "appear and actively defend itself" when "it appears reasonably probable that damages paid will exceed" the primary

mind; arguably contrary to *Tesmer,* which, in an alternate holding, opined that testimony by judges inadmissible to show judge's intent and knowledge—219 Wis. 2d at 730, 580 N.W.2d at 317).

limits. We agree with Physicians Insurance on both points.

¶ 10. The legislature envisioned two possible scenarios in connection with malpractice claims filed against health-care providers. First, if the claim "may potentially affect the fund," the primary carrier must protect the Fund's interests by both giving it an "adequate defense" and by acting "in good faith and in a fiduciary relationship with respect" to that claim. WIS. STAT. § 655.27(5)(b). Second, where "it appears reasonably probable that damages paid will exceed" the primary limits, the Fund may hire its own lawyer and "actively defend itself." WIS. STAT. § 655.27(5)(a)3. We must apply statutes so that every word is given meaning and effect. *See Donaldson v. State*, 93 Wis. 2d 306, 315, 286 N.W.2d 817, 821 (1980). Moreover, and of particular significance here, "where the legislature uses similar but different terms in a statute, particularly within the same section, it is presumed that the legislature intended such terms to have different meanings." *Nelson*, 211 Wis. 2d at 496, 565 N.W.2d at 128.

¶ 11. The Fund's interpretation of the statutes would force the lawyer hired by the primary carrier to represent not only it and its insured but also the Fund. This violates the apparent rule in this state that a lawyer/client relationship can only be formed by the mutual consent of the lawyer and client. *See Marten Transp. Ltd. v. Hartford Specialty Co.*, 194 Wis. 2d 1, 13–14, 533 N.W.2d 452, 455 (1995) (plurality opinion by Justice Geske on behalf of three members of the court). Additionally, SCR 20:1.6(a), with exceptions not material here, provides that "[a] lawyer shall not

reveal information relating to representation of a client unless the client consents after consultation." The rule is stark: confidential client information is confidential, and the client's lawyer "shall not" reveal that information to anyone without the client's informed consent. There are no gradations of confidentiality; the Fund's interpretation of the statute would put the lawyer hired by the primary carrier in an untenable position—disclosure to the Fund of confidential information gleaned from the lawyer's primary clients (the primary insurer and its insured) that might very well provide the Fund with ammunition in both deciding whether to seek contribution and in the actual prosecution of a claim for contribution. As we have recognized, "the interests of the fund and a health care provider 'may not always be united.' " *Goff v. Seldera,* 202 Wis. 2d 600, 617, 550 N.W.2d 144, 151 (Ct. App. 1996). The injunction in the book of *Saint Matthew* is particularly appropriate in the context of this case: "No man can serve two masters." *Matthew* 6:24. To enforce the Fund's position here would require lawyers hired by the primary carrier to do precisely that.[4]

---

[4] It is no answer to say, as counsel for the Fund advised the trial court, that if, for example, the lawyer representing the primary carrier and its insured is told by the insured that he or she "was probably negligent" that "that is confidential information that should not be disclosed to the Fund," but, rather, the lawyer "should then tell the Fund that a conflict of interest has developed. That he cannot disclose the basis for the conflict. That he can no longer continue to represent the Fund. And in that case we have no objection to his continuing to represent [the insured physician]. And that we would then get another lawyer." To a good lawyer, a disclosure that there is *something* that cannot be told is like blood in the water to a shark; it will spur a feeding frenzy of discovery and investigation. The disclo-

¶ 12. There is an additional reason why we believe that the legislature's distinction between an "adequate defense" and an "active[ ] defen[se]" is material. Words of a non-technical nature in the Wisconsin statutes "shall be construed according to common and approved usage," "unless such construction would produce a result inconsistent with the manifest intent of the legislature." WIS. STAT. § 990.01(1). The word "adequate" means, essentially, "fully sufficient for a specified or implied requirement; *often*: narrowly or barely sufficient: no more than satisfactory." WEBSTER'S THIRD NEW INT'L DICTIONARY 25 (unabr. 1993). The opposite of "active" is "passive." Thus, the legislature has determined that unless "it appears reasonably probable that damages paid will exceed" the primary limits, the Fund's role in the chapter 655 claim is to be non-"active"; that is, passive. If it does not appear "reasonably probable" that the Fund will be liable for any amount of the claim, then receipt of the filed documents and information about what's going on in the case is "adequate"; that is, "sufficient" for the Fund's purposes. If, on the other hand, it *does* appear "reasonably probable" that the Fund will have to pay part of the claim, then an "adequate defense" is *not* suitable to the circumstance; rather, the Fund needs (and the monies that it holds in trust need) an "active" defense that encompasses what SCR 20:1.1 requires that all lawyers give to their clients: "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Certainly, no client faced with the loss of liberty or fortune would want representation that was merely "adequate"; every client is entitled to

---

sure *itself* would be a violation of the lawyer's duty to keep confidential information confidential.

"fearless, vigorous and effective advocacy." *See Offutt v. United States*, 348 U.S. 11, 13 (1954). Thus, the legislature has provided that when it appears that the Fund will be faced with financial loss, the Fund will hire a lawyer to provide its "active[ ] defen[se]." The Fund's interpretation blurs this distinction, which was, albeit in a different context, recognized by *Goff*, 202 Wis. 2d at 617, 550 N.W.2d at 151 (failure to name fund precluded it from hiring own lawyer and appearing to actively defend itself; failure to name fund therefore relegated it to the "adequate defense" provided for by WIS. STAT. § 655.27(5)(b)).

¶ 13. In sum, we perceive nothing either in the language of the material part of WIS. STAT. ch. 655 or in the interests of fairness that supports the Fund's position. Accordingly, we reverse.

*By the Court.*—Order reversed.