ESTATE OF Mark CAPISTRANT, deceased, by Patricia A. Capistrant, Independent Executor, Patricia A. Capistrant, individually, and Rebecca Capistrant, Sean Capistrant, and Tyler Capistrant, minors, by their Guardian ad Litem, Ted M. Warshafsky, Plaintiffs-Respondents,

v.

FROEDTERT MEMORIAL LUTHERAN HOSPITAL, INC., The Medical College of Wisconsin, Inc., and Medical College of Wisconsin Affiliated Hospitals, Inc., Defendants,

PHYSICIANS INSURANCE COMPANY OF WISCONSIN, INC., Defendant-Respondent,

OHIC INSURANCE COMPANY, Defendant,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant-Appellant.

Court of Appeals

*No. 03–0014. Submitted on briefs September 2, 2003.—
Decided September 23, 2003.*

2003 WI App 213

(Also reported in 671 N.W.2d 400.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul J. Kelly* and *Maile E. Buell* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John S. Skilton* and *Sarah E. Reindl* of *Heller Ehrman White & McAuliffe, L.L.P.*, Madison; and *Michael B. Van Sicklen* and *Nai-kang Tsao* of *Foley & Lardner*, Madison.

Before Fine, Schudson and Curley, JJ.

¶ 1. FINE, J. The Wisconsin Patients Compensation Fund appeals from a judgment directing it to pay $2,108,065 plus costs to the plaintiff Patricia A. Capistrant as the result of a jury's verdict finding that various physicians were responsible for the death of her husband, Mark Capistrant. The Fund contends that all of the primary insurance covering those physicians should be viewed as an homogenous pool of funds that must first be exhausted before the Fund's excess-liability coverage kicks in. We disagree and affirm. Physicians Insurance Company of Wisconsin, Inc., seeks frivolous-appeal costs under WIS. STAT. RULE 809.25(3)(c)2. We deny the motion.

**I.**

¶ 2. This is a dispute between the Fund and Physicians Insurance. No one on appeal challenges either the jury's findings of negligence or its award of damages. The jury found that Louis Somberg, M.D., Rebecca Freer, M.D., Jeanette Chassaignac, M.D., and a radiology resident, whom the verdict does not name, were all causally negligent in connection with Mark Capistrant's treatment and death at Froedtert Memorial Lutheran Hospital on July 31, 1997. Drs. Freer and Chassaignac as well as the radiology resident worked at Froedtert, and were employed by the Medical College of Wisconsin Affiliated Hospitals, Inc. Dr. Somberg worked for The Medical College of Wisconsin, Inc. The jury apportioned the causal negligence as follows:

- Dr. Somberg: 70%

- Dr. Freer: 12.5%

- Dr. Chassaignac: 5%

- The radiology resident: 12.5%

The jury assessed total damages (including two items that were answered by the trial court upon the parties' stipulation) of $2,700,000 plus an unspecified amount for funeral expenses, which the verdict form indicated would be determined by the trial court.

¶ 3. Dr. Somberg was self-insured through his employer, The Medical College, with a limit of $600,000 per occurrence. The other physicians were insured by Physicians Insurance, with limits of $1,000,000 per occurrence. Physicians Insurance also provided an additional $1,000,000 per occurrence insurance for residents employed by Medical College of Wisconsin Affili-

ated Hospitals. Thus, excluding consideration of the Fund's liability in this case, there was the self-insurance for Dr. Somberg of $600,000, and, according to the Fund, $4,000,000 of total primary coverage provided by Physicians Insurance to Drs. Freer and Chassaignac and the radiology resident. The Fund contends that this $4,600,000 must first be exhausted before its statutory liability kicks in. On the other hand, Physicians Insurance argues that, subject to the Fund's right to seek contribution for the proportion of causal negligence attributable to Drs. Freer and Chassaignac and the radiology resident, the Fund must cover Dr. Somberg's joint and several liability for everything over his $600,000 self-insurance limit. We agree with Physicians Insurance.

## II.

¶ 4. The Fund is, in essence, an excess-coverage carrier, created by the legislature to provide medical-malpractice insurance for damages that exceed a health-care provider's underlying primary insurance or self-insurance. WIS. STAT. § 655.27(1); *Patients Comp. Fund v. Lutheran Hospital-LaCrosse, Inc.*, 223 Wis. 2d 439, 452–453, 588 N.W.2d 35, 40 (1999). The scope of the Fund's liability is set by statute. *Wisconsin Patients Comp. Fund v. Wisconsin Health Care Liab. Ins. Plan*, 200 Wis. 2d 599, 607, 547 N.W.2d 578, 580–581 (1996). We interpret and apply the applicable statutes *de novo. Wisconsin Patients Comp. Fund v. Physicians Ins. Co. of Wis., Inc.*, 2000 WI App 248, ¶ 8, 239 Wis. 2d 360, 366–367, 620 N.W.2d 457, 460.

¶ 5. The goal of statutory construction is, of course, to discern the legislature's intent. *Id.*, 2000 WI

App 248, ¶ 9, 239 Wis. 2d at 368, 620 N.W.2d at 460–461. Thus, we first look at the statute's language. *See id.*, 2000 WI App 248, ¶ 9, 239 Wis. 2d at 368, 620 N.W.2d at 461. If the language is clear, we simply apply the words as they stand, without diving beneath the surface in search of delphic signs of other meanings. *Id.*, 2000 WI App 248, ¶ 12, 239 Wis. 2d at 371, 620 N.W.2d at 462; *see also State v. Peters*, 2003 WI 88, ¶ 14, 263 Wis. 2d 475, 481–482, 665 N.W.2d 171, 174.

■■■■

¶ 6. Every health-care provider in Wisconsin must carry insurance, or be self-insured, up to certain limits. WIS. STAT. § 655.23(3)(a). The Fund must pay "that portion of a medical malpractice claim which is in excess of the limits . . . or the maximum liability limit for which the health care provider is insured, whichever limit is greater." WIS. STAT. § 655.27(1). Carriers providing primary coverage, like Physicians Insurance here, "are liable for malpractice for no more than the limits [set out in the statute] or the maximum liability limit for which the health care provider is insured." WIS. STAT. § 655.23(5). Further, the carrier providing primary coverage "agrees to pay in full . . . [a]ny . . . judgment imposed against the insured under [chapter 655] up to the limits [set out in the statute] or the maximum liability limit for which the health care provider is insured, whichever is greater." WIS. STAT. § 655.24(2)(a)2. These provisions comport with the general rule that an insurance carrier is only required to pay what it contracted to pay. *Ehlers v. Johnson*, 164 Wis. 2d 560, 563, 476 N.W.2d 291, 293 (Ct. App. 1991) (absent contrary statute, insurance company's liability turns on the provisions of the insurance contract). Here, Physicians Insurance contracted to pay damages

that its insureds were "legally obligated to pay" as the result of their medical malpractice. Dr. Somberg was not one of its insureds.

¶ 7. No one disputes that Drs. Somberg, Freer, Chassaignac, and the radiology resident are "health care provider[s]." *See* WIS. STAT. §§ 655.001(8) (" 'Health care provider' means a person to whom this chapter applies under s. 655.002 (1)."); 655.002(1) ("[T]his chapter applies to . . . (a) A physician . . . for whom this state is a principal place of practice and who practices his or her profession in this state more than 240 hours in a fiscal year.").[1] Additionally, no one disputes that Dr. Somberg's self-insurance limit of $600,000 complied with WIS. STAT. § 655.23(4)(c)2 in connection with Mark Capistrant's treatment.[2] The respective liability of the Fund and Physicians Insurance turns on the jury's apportionment of the physicians' causal negligence in their treatment of Mark Capistrant.

¶ 8. "A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed." WIS. STAT. § 895.045(1). Section 895.045(1) applies to medical-malpractice actions under WIS. STAT. ch. 655 by virtue of WIS. STAT. § 893.55(6), which makes § 895.045(1) applicable to "health care providers." Although the Fund argues that § 895.045(1) should not apply to it because *it* is not a "health care provider," the

---

[1] Under WIS. STAT. ch. 655, a "fiscal year" is "the period beginning on July 1 and ending on the following June 30." WIS. STAT. § 655.001(6).

[2] WISCONSIN STAT. § 655.23(4)(c)2 permits a self-insured health-care provider to opt for an underlying limit of "not less than $600,000 for each occurrence on or after July 1, 1997, and before July 1, 1999."

Fund, like any entity providing insurance coverage, stands in the shoes of those to whom it provides coverage, and is responsible for their conduct within the ambit of that coverage. *See Wisconsin Patients Comp. Fund v. Continental Cas. Co.*, 122 Wis. 2d 144, 152, 361 N.W.2d 666, 671 (1985).

¶ 9. As noted, the Fund must pay "that portion of a medical malpractice claim which is in excess of the limits . . . or the maximum liability limit for which the health care provider is insured, whichever limit is greater." WIS. STAT. § 655.27(1). WISCONSIN STAT. § 895.045(1) establishes the amount of the medical malpractice claim for which a health-care provider is liable. Dr. Somberg is jointly and severally liable for the full award because his causal negligence was more than fifty-one percent. Under § 655.27(1), the Fund must pay what Dr. Somberg owes, less his $600,000 of self-insurance. The same result is required by WIS. STAT. § 655.27(5)(d).

¶ 10. WISCONSIN STAT. § 655.27(5)(d) provides, as material to our analysis: "A person [*here, Patricia A. Capistrant*] who has recovered a final judgment . . . against a health care provider [*here, Dr. Somberg*] . . . may file a claim with [the Fund] to recover that portion of such judgment . . . which is in excess of the limits in s. 655.23 (4) [*here, $600,000*]."[3] Although the Fund

---

[3] WISCONSIN STAT. § 655.27(5)(d), reads in full:

A person who has recovered a final judgment or a settlement approved by the board of governors against a health care provider, or an employee of a health care provider, that has coverage under the fund may file a claim with the board of governors to recover that portion of such judgment or settlement which is in excess of the limits in s. 655.23 (4) or the maximum liability limit for which the health care provider is insured, whichever limit is greater. In the event the fund incurs liability for future payments exceeding

argues that the phrase "which is in excess of the limits in s. 655.23 (4)" encompasses *all* the insurance provided by Physicians Insurance to Drs. Freer and Chassaignac and the radiology resident (and not just that proportional to the percentage of causal negligence attributable to those physicians), *only* Dr. Somberg is on the hook for the entire award. As we have seen, Physicians Insurance did not insure Dr. Somberg.

¶ 11. Stated another way, WIS. STAT. § 895.045(1) provides: "The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person." Thus, Dr. Freer and the radiology resident are each responsible for only 12.5 percent of the award, and Dr. Chassaignac is responsible for only 5 percent of the award. Contrary to the Fund's contention, Physicians Insurance can be liable for no more than its insureds

---

$1,000,000 to any person under a single claim as the result of a settlement or judgment that is entered into or rendered under this chapter for an act or omission that occurred on or after May 25, 1995, the fund shall pay, after deducting the reasonable costs of collection attributable to the remaining liability, including attorney fees reduced to present value, the full medical expenses each year, plus an amount not to exceed $500,000 per year that will pay the remaining liability over the person's anticipated lifetime, or until the liability is paid in full. If the remaining liability is not paid before the person dies, the fund may pay the remaining liability in a lump sum. Payments shall be made from money collected and paid into the fund under sub. (3) and from interest earned thereon. For claims subject to a periodic payment made under this paragraph, payments shall be made until the claim has been paid in full, except as provided in s. 655.015. Periodic payments made under this paragraph include direct or indirect payment or commitment of moneys to or on behalf of any person under a single claim by any funding mechanism. No interest may be paid by the fund on the unpaid portion of any claim filed under this paragraph, except as provided under s. 807.01 (4), 814.04 (4) or 815.05 (8).

are liable; WIS. STAT. § 655.23(3) requires that "every health care provider . . . shall insure . . . *the health care provider's liability*." (Emphasis added.) Physicians Insurance insured only Drs. Freer and Chassaignac and the radiology resident; it did not insure Dr. Somberg. The Fund cannot shanghai the Physicians Insurance policies to cover Dr. Somberg.[4]

## III.

■

¶ 12. Physicians Insurance seeks frivolous-appeal costs under WIS. STAT. RULE 809.25(3)(c)2, which, as material to Physicians Insurance's motion, mandates an award of "costs, fees, and reasonable attorney fees" to the party successful on the appeal if we find that the opposing "party's attorney knew, or should have known, that the appeal . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." *See also* WIS. STAT. § 809.25(3)(a). In support of its motion, Physicians Insurance not only reiterates the arguments made in its appellate brief, but also points to a stipulation where the Fund acknowledged that, in the part pointed to by Physicians Insurance, the "Fund provides coverage in excess of the limits expressed in Sec. 655.23(4), Wis. Stats., or the maximum limit for which a healthcare [*sic*] provider is insured, whichever limit is greater" for Drs. Freer and Chassaignac, among others. We disagree with Physicians Insurance's contention that this stipulation wholly undercuts the Fund's legal arguments on this

---

[4] Physicians Insurance has paid the amounts attributable to the percentage of causal negligence of its insureds—Drs. Freer and Chassaignac, and the unnamed radiology resident.

appeal, and although we have rejected these arguments, the strength of which from the Fund's standpoint may have been nourished by the sweet sugar of hope, we cannot say that they were frivolous within the meaning of RULE 809.25(3)(c)2. Accordingly, we deny Physicians Insurance's motion for frivolous-appeal costs.

*By the Court.*—Judgment affirmed; motion for frivolous-appeal costs denied.