COURT OF APPEALS
DECISION
DATED AND FILED

August 25, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2028**

Cir. Ct. No. **2017CV144**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

DAVID A. STEINKE,

PLAINTIFF-APPELLANT,

V.

SCOTT R. POPPE, SCOTT'S SEPTIC PUMPING, LLC AND STATE FARM
FIRE AND CASUALTY COMPANY,

DEFENDANTS-RESPONDENTS,

HUMANA INSURANCE COMPANY,

DEFENDANT.

---

APPEAL from an order of the circuit court for Sawyer County: JOHN M. YACKEL, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. David Steinke appeals a summary judgment dismissing his lawsuit against Scott R. Poppe, Scott's Septic Pumping, LLC, and State Farm Fire and Casualty Company (collectively, "Poppe"). Steinke argues the circuit court erred by concluding, as a matter of law, that after pumping Steinke's septic tank, Poppe did not have a duty to warn Steinke about the poor condition of the septic tank's cover or to take other action to prevent Steinke from falling through the cover into the tank. We agree with the court that the undisputed facts establish Poppe owed Steinke no such duty. We therefore affirm.[1]

## BACKGROUND

¶2      Steinke purchased a house in Sawyer County in June 2013. The house had a septic tank, which had been installed in 1982. The septic tank was steel, which was typical for septic systems dating from that time. The tank had a cover (or lid) that was flush with the ground and was covered with dirt, which held the cover in place. Steel septic tanks are no longer common. Instead, modern septic tanks are typically made of concrete and have covers that are padlocked and raised above ground level.

---

[1] In the alternative, Poppe argues the circuit court properly granted him summary judgment because imposing a duty on him under the circumstances of this case would be contrary to public policy. Because we conclude Poppe had no duty to warn Steinke about the condition of the septic tank's lid or to take other action to address that condition, we need not address Poppe's public policy argument. *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

¶3      In November 2013, Steinke hired Poppe to pump his home's septic tank. Poppe is a licensed septic tank pumper. He does not, however, repair or inspect septic systems.

¶4      When Poppe arrived at Steinke's property on November 4, 2013, he first spoke with Steinke to obtain directions to the septic tank, as he had never pumped it before. Poppe then went to the area where Steinke told him the septic tank was located and found the tank's lid by poking the ground with a metal rod. Poppe removed the dirt that was covering the lid and noticed that the lid was rusted. He then removed the lid, pumped the tank dry, put the lid back in place, and re-covered it with dirt.

¶5      At his deposition, Poppe testified that after he finished pumping Steinke's septic tank in November 2013, he went back to Steinke's house and told Steinke that his septic tank needed a new lid because the current lid was rusted. Steinke then paid Poppe, and Poppe left the premises. Poppe subsequently submitted a report to Sawyer County indicating that he had pumped Steinke's septic tank and that he did not observe any ponding of wastewater or effluent on the surface of Steinke's property.

¶6      Steinke testified at his deposition that he had no memory of the November 2013 pumping. He conceded, however, that he must have been present that day based on the date of the check he used to pay Poppe. Steinke did not dispute Poppe's testimony that he told Steinke the septic tank's lid needed to be replaced in November 2013; he simply had no memory of that conversation.

¶7      Steinke again hired Poppe to pump his home's septic tank in 2016. On September 9, 2016, Poppe went to Steinke's property and drove directly to the septic tank, as he remembered where it was located. Poppe testified that when he

removed the dirt covering the tank's lid, he saw that the lid was still rusted and was in "even worse" condition than before. After Poppe finished pumping the tank, he put the lid back in place and re-covered it with dirt. He did not put a board over the lid or rope off the area. He testified he did not see the lid as "a potential hazard if somebody stepped on it" because he had stepped on the lid when trying to locate it, and nothing happened.

¶8   Poppe testified he knocked on the door of Steinke's house after he finished pumping the septic tank in September 2016, but no one answered. Poppe explained he had intended to tell Steinke again that he needed to replace the tank's lid because it was rusted, which could allow water and dirt to get into the tank. Poppe testified it never occurred to him to warn Steinke that if he stepped on the lid he could fall into the septic tank. He also asserted that it is not his responsibility to tell a homeowner about the condition of their septic tank's lid. He stated, however, that he generally does so as a matter of courtesy.

¶9   Steinke conceded he was home when Poppe pumped his septic tank in September 2016, but he testified he never heard Poppe knock on his door that day. It is undisputed that Poppe left Steinke's property in September 2016 without speaking to Steinke. Poppe again filed a report with Sawyer County indicating that he had pumped Steinke's septic tank and that he did not observe any ponding on the surface of Steinke's property.

¶10   On the morning of October 4, 2016—just under one month after Poppe pumped Steinke's septic tank the second time—Steinke went for a walk around his property. Steinke knew that he was walking in the general vicinity of the septic tank's lid, but he did not know the lid's exact location. When Steinke unknowingly stepped onto the lid, it gave way, and he fell into the septic tank.

4

Steinke testified the fluid in the tank was deep enough to reach his chest. Steinke was in the tank for approximately five and one-half hours before he was able to climb out.

¶11 As a result of his fall into the septic tank, Steinke sustained abrasions on his elbows and knees. At the time of his deposition in August 2018, Steinke testified he no longer had any physical pain associated with the fall. He testified, however, that he suffers from recurring nightmares related to the fall and attends therapy to cope with the fall's mental and emotional effects.

¶12 In December 2017, Steinke filed the instant lawsuit against Poppe, alleging that Poppe had a duty "to repair or to notify … Steinke … of problems with the septic system that made it a human health and safety hazard," and that Poppe was negligent by failing to do so. Steinke also alleged Poppe was negligent by failing to "ensure the problems with the septic system which made it a human health and safety hazard were open and obvious or were guarded with a barrier which would prevent humans from falling into the system." Poppe moved for summary judgment, arguing Steinke's negligence claims failed because Poppe did not owe Steinke a duty to inspect the septic tank's cover or to warn him of its rusted condition.

¶13 The circuit court granted Poppe's summary judgment motion. In its oral ruling, the court explained that Poppe was hired to pump Steinke's septic tank, not inspect it. As such, the court reasoned that Poppe's only duties were to "make sure that everything is done in a sanitary manner. That there is not any dangerous spills of the refuse that is in the septic tank. And to make sure that there is not any standing water out on the drain field, or anything like that." The court continued:

> There is no requirement from what the Court can see on Mr. Poppe to inform or to inspect and to say, hey, this septic covering is not doing well. It looks like it's in rough shape. And so I somehow I'm going to either flag this septic system or to tell Mr. Steinke that he can no longer use this septic tank until he gets it replaced. That was beyond the scope of what Mr. Poppe was hired to do. He was hired to pump the tank in a professional manner under the statutory code, or the administrative code, and the local ordinances. And by all accounts he did that.

¶14 The circuit court also noted it was undisputed that Poppe had informed Steinke of the lid's rusted condition when he pumped the tank in 2013. The court concluded that doing so "[fell] outside of Mr. Poppe's responsibility as far as what he was hired to do" and was instead "just good business practice." In any event, the court reasoned that even though Poppe had informed Steinke of the lid's condition in 2013, Steinke's fall into the septic tank in 2016 was not "foreseeable."

¶15 The circuit court ultimately entered a written order granting Poppe's summary judgment motion and dismissing Steinke's claims with prejudice. Steinke now appeals.

## DISCUSSION

¶16 We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2017-18).[2]

¶17    In order to prevail on a negligence claim, a plaintiff must establish four elements:  (1) the existence of a duty of care on the part of the defendant; (2) a breach of that duty of care; (3) a causal connection between the defendant's breach and the plaintiff's injury; and (4) actual loss or damage resulting from the breach. *Hocking v. City of Dodgeville*, 2009 WI 70, ¶10, 318 Wis. 2d 681, 768 N.W.2d 552. Here, the circuit court concluded Poppe was entitled to summary judgment because the undisputed facts established that he did not have a duty to inspect the lid of Steinke's septic tank or to warn Steinke of the lid's rusted condition.

¶18    "Wisconsin has adopted the minority view from *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), which established that everyone owes a duty to the world at large." *Hocking*, 318 Wis. 2d 681, ¶12.  That duty, however, is not unlimited and is instead restricted to what is reasonable under the circumstances. *Id.*  Thus,

> [i]f a person, without intending to do harm, acts, or fails to do an act, that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property, he or she is not exercising ordinary care under the circumstances, and is therefore negligent.

*Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶30, 291 Wis. 2d 283, 717 N.W.2d 17.  "Ordinary care involves the concept of foreseeability, in that a reasonable person exercising ordinary care would have foreseen injury as a consequence of his [or her] act." *Id.*

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶19    On appeal, Steinke contends there are genuine issues of material fact as to whether Poppe had a duty to warn him of the dangerous condition of his septic tank's lid, to mark the dangerous condition in some way, or to repair the lid.  First, Steinke argues industry custom gave rise to those duties.  Second, Steinke argues the Sawyer County ordinance pertaining to septic systems imposed those duties on Poppe.  Third, Steinke argues those duties arose under the common law because it was foreseeable that the lid's condition could cause Steinke to fall into the septic tank, and a reasonable person in Poppe's position therefore would have warned Steinke about the condition of the lid or taken other action to address the danger it posed.  We address these arguments in turn.

## I.  Industry custom

¶20    A jury may consider evidence of an industry custom when determining whether a defendant acted with ordinary care.  *See* WIS JI—CIVIL 1019.  Such evidence "is not conclusive as to what meets the required standard for ordinary care or reasonable safety"; however, "[w]hat is generally done by persons engaged in a similar activity has some bearing on what an ordinarily prudent person would do under the same or like circumstances."  ***Id.***

¶21    Steinke argues the testimony of his plumbing expert, Craig Every, provided evidence of industry customs that Poppe failed to follow.  Specifically, Every testified that industry customs required Poppe to:  (1) warn Steinke of the dangerous condition of his septic tank's lid; (2) flag the area; and (3) either repair the lid or follow up with Steinke to ensure that the lid was repaired by someone else.  Every also testified that Poppe was required to leave Steinke's septic system in a safe and sanitary condition, which he failed to do when he re-covered the septic tank's rusted lid with soil.  Steinke contends that Every's testimony, at a minimum,

created a genuine issue of material fact as to whether Poppe had a duty to warn Steinke about the dangerous condition of his septic tank's lid or to take other action to address that danger.

¶22    We disagree. "A custom, the failure to observe which will constitute negligence, must be certain, uniform, and invariable, and must also be notorious and known to all persons of intelligence having to do with the subject to which it relates." *Sprecher v. Roberts*, 212 Wis. 69, 75, 248 N.W. 795 (1933) (citation omitted). Every's testimony did not provide evidence of any such certain, uniform, invariable, and notorious custom within the septic pumping industry.

¶23    Every testified that he is a plumber; he is not a licensed septic tank pumper. Thus, when Every is working at a property that needs to have its septic tank pumped, he hires someone else to complete that task. Every further testified that only about ten percent of his work as a plumber involves septic systems. Of that ten percent, ninety percent involves the installation of new septic systems, rather than the repair of existing systems. Moreover, Every testified that he has never done any work on septic systems in Sawyer County. He is therefore unfamiliar with the common practices of septic tank pumpers in Sawyer County. As such, Every's testimony does not demonstrate the existence of a custom or practice among septic tank pumpers in Sawyer County, nor does it show that Poppe violated any such custom or practice.

¶24    In addition, we observe that Every's opinions regarding industry custom were based in large part on his own interpretation of Sawyer County's septic system ordinance, which incorporates various administrative code provisions. The interpretation of ordinances and administrative code provisions, however, are questions of law. *See Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51,

¶18, 290 Wis. 2d 421, 714 N.W.2d 130 (administrative code); ***Town of Delton v. Liston***, 2007 WI App 120, ¶8, 301 Wis. 2d 720, 731 N.W.2d 308 (ordinances). A court need not defer to an expert witness's opinion on a question of law. *See **Town of E. Troy v. Town & Country Waste Serv., Inc.***, 159 Wis. 2d 694, 707 n.7, 465 N.W.2d 510 (Ct. App. 1990); *see also **Wisconsin Patients Comp. Fund v. Physicians Ins. Co. of Wis.***, 2000 WI App 248, ¶8 n.3, 239 Wis. 2d 360, 620 N.W.2d 457 ("[T]he only 'expert' on domestic law is the court."). As explained in the following section, we reject Steinke's argument that the relevant ordinance and administrative code provisions imposed a duty on Poppe to warn Steinke of the lid's condition or to take other action to address any danger it posed.

¶25    In his reply brief, Steinke argues Poppe "imposed a duty of notifying customers upon himself by making it his common practice" to do so. This argument fails because Steinke cites no legal authority in support of the proposition that Poppe's general practice of informing customers about the condition of their septic tanks' lids, as a matter of professional courtesy, gave rise to a required duty to warn. We need not address arguments that are unsupported by citations to legal authority. ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Instead, for the reasons explained above, we conclude the undisputed facts do not demonstrate the existence of an industry custom requiring Poppe to warn Steinke about the condition of his septic tank's lid or to take some other action to address that issue.

**II.  Sawyer County septic system ordinance**

¶26    Steinke next argues that the Sawyer County ordinance pertaining to septic systems, which incorporates certain provisions of the Wisconsin Administrative Code, imposed a duty on Poppe to warn him of the dangerous condition of his septic tank's lid or to take other action to address that danger.

Steinke is correct that a party's duty of care is sometimes set by a statute, ordinance, or administrative regulation. *See **Antwaun A. v. Heritage Mut. Ins. Co.,*** 228 Wis. 2d 44, 66-67, 596 N.W.2d 456 (1999); *see also* WIS JI—CIVIL 1009. In this case, however, Steinke has not cited any ordinance or administrative code provision that actually imposed a duty on Poppe to take any action regarding the lid of Steinke's septic tank.

¶27     Sawyer County Ordinance #1-2011 regulates private sewage systems. Sawyer County, Wis., Ordinance #1-2011 (Apr. 19, 2011). The stated purpose of the ordinance is "to promote and protect public health and safety by assuring the proper siting, design, installation, inspection and management of private on-site wastewater treatment systems and non-plumbing sanitation systems." *Id.*, § 2.0.

¶28     Ordinance #1-2011 incorporates WIS. ADMIN. CODE ch. SPS 383 (Dec. 2019).[3] WISCONSIN ADMIN. CODE § SPS 383.51(1) states that a private on-site wastewater treatment system (POWTS) "shall be maintained at all times so as not to create a human health hazard." Based on that language, Steinke argues Poppe had a duty to maintain Steinke's septic tank in a manner that did not create a human health hazard. Steinke further argues that Poppe breached that duty by re-covering the tank's rusted lid with soil and by failing to flag or rope off the area.

¶29     Steinke's argument fails because the administrative code expressly provides that the *owner* of a POWTS "shall be responsible for ensuring that the operation and maintenance of the POWTS occurs in accordance with this chapter."

---

[3] All references to WIS. ADMIN. CODE ch. SPS 383 are to the December 2019 register. Ordinance #1-2011 states that it incorporates WIS. ADMIN. CODE ch. Comm 83. *See* Sawyer County, Wis., Ordinance #1-2011, § 4.0 (Apr. 19, 2011). That chapter of the administrative code was renumbered as ch. SPS 383 in December 2011. *See* Wisconsin Administrative Register, Dec. 2011, No. 672B, https://docs.legis.wisconsin.gov/code/register/2011/672b.

WIS. ADMIN. CODE § SPS 383.52(1)(a)1. Steinke does not cite any administrative code provision that places the responsibility for maintaining a POWTS on an individual, like Poppe, who is merely hired to pump the system's tank.

¶30 Steinke also implies that Poppe had a duty to inspect the septic tank's lid for damage because he is "qualified to perform septic inspections" under WIS. ADMIN. CODE § SPS 383.54(4)(d)2.f. That section, however, merely provides that a POWTS that was in existence prior to July 1, 2000, "shall be visually inspected at least once every 3 years to determine whether wastewater or effluent from the POWTS is ponding on the surface of the ground." WIS. ADMIN. CODE § SPS 383.54(4)(d)1. Poppe complied with that requirement, noting on the reports he filed with Sawyer County in both 2013 and 2016 that he had not observed any ponding on Steinke's property. Nothing in § SPS 383.54(4)(d) required Poppe to perform any further inspection of Steinke's septic tank or its lid.

¶31 Finally, Steinke asserts that Sawyer County has a "policy" pertaining to "corroding steel septic tanks" that "recommends hazardous conditions be flagged, ribboned, covered, barricaded, and/or roped off to protect the public from health and safety hazards." In support of that assertion, Steinke cites what appears to be a pamphlet issued by Sawyer County's Zoning and Conservation Office. That pamphlet—entitled "Health and Safety Hazards of Steel Septic Tanks"—warns that steel septic tanks are "prone to rust and corrosion," which can weaken their structural integrity and lead to "[c]ollapse and/or cave-in." Under the heading "Solutions," the pamphlet states: "Avoid death, injury, damage to property and other health and safety hazards by considering the following: … Flag, ribbon, cover, barricade and/or rope-off potential hazardous areas."

¶32  Steinke's argument that the above pamphlet imposed a duty on Poppe fails for at least four reasons.  First, while Steinke characterizes the pamphlet as a Sawyer County "policy," there is no evidence in the record indicating that Sawyer County has ever formally adopted the information set forth in the pamphlet as a policy.  Second, Steinke cites no legal authority supporting the proposition that a policy—as opposed to a statute, ordinance, or administrative regulation—can impose a heightened duty of care.  Third, the pamphlet merely recommends "considering" flagging or marking hazardous areas.  A mere recommendation is plainly insufficient to impose a duty of care.  Fourth, when read as a whole, the pamphlet addresses what *owners* of steel septic tanks should do to address potential hazards.  Nothing in the pamphlet sets forth any steps that should be taken by an individual who is merely hired to pump a steel septic tank.  Accordingly, we reject Steinke's claim that the pamphlet imposed a duty on Poppe with respect to the lid of Steinke's septic tank.

## III.  Common law duty

¶33  Steinke also argues that regardless of any industry custom or any duty imposed by an ordinance or the administrative code, Poppe had a common law duty to "do something to prevent people and things from getting into [Steinke's] septic tank."  Steinke asserts that Poppe could have fulfilled that duty by "putting a board over the hole, roping the area off, or notifying … Steinke," but he instead "placed the lid over the hole, buried it, and then left."  Steinke contends it is "incredible to argue a reasonable person would bury a fragile septic tank lid and walk away from it without comment or safety precautions knowing the risks posed by such a trap."  He further argues Poppe had a "duty to act" because it was "foreseeable to him that … Steinke would fall into the tank."

¶34    Steinke's argument ignores the fact that Poppe was hired specifically to pump Steinke's septic tank—not to inspect or repair it.  When a contractual relationship exists between the parties, the nature of their contractual duties may help us to determine "what is included within the duty of ordinary care."  *Hoida*, 291 Wis. 2d 283, ¶35; *see also* ***Cattau v. National Ins. Servs. of Wis., Inc.***, No. 2016AP493, unpublished slip op. ¶24 (WI App June 13, 2018), *aff'd*, 2019 WI 46, 386 Wis. 2d 515, 926 N.W.2d 756 ("When contracts are in play, the nature of the contractual duties will help define what is foreseeable, and in turn, what kind of response is reasonable and consistent with the standard of ordinary care.").[4]

¶35    For instance, in ***Weather Shield Manufacturing, Inc. v. Compass Group USA, Inc.***, No. 2010AP2992, unpublished slip op. ¶2 (WI App Feb. 2, 2012), two vendors contracted to provide coffee and vending services for Weather Shield, which included providing coffeemakers and connecting them to an existing water line.  The flexible water hose to which the coffeemakers were connected later failed, causing substantial damage to Weather Shield's property.  *Id.*, ¶3.  Weather Shield then brought a negligence claim against the vendors, asserting they "had a duty to inspect the plumbing connection and replace the flexible water hose with copper tubing or, in the alternative, to warn Weather Shield regarding the hose."  *Id.*

¶36    On appeal, we affirmed the circuit court's determination that the vendors owed no such duty to Weather Shield.  *Id.*, ¶¶1, 4.  We reasoned that under their respective contracts, both vendors had merely agreed to provide and install

_____

[4] In his reply brief, Steinke criticizes Poppe for citing ***Cattau v. National Insurance Services of Wisconsin, Inc.***, No. 2016AP493, unpublished slip op. (WI App June 13, 2018), *aff'd*, 2019 WI 46, 386 Wis. 2d 515, 926 N.W.2d 756, and ***Weather Shield Manufacturing, Inc. v. Compass Group USA, Inc.***, No. 2010AP2992, unpublished slip op. (WI App Feb. 2, 2012).  However, both *Cattau* and *Weather Shield* are authored opinions issued after July 1, 2009.  As such, Poppe could properly cite them for their persuasive value under WIS. STAT. RULE 809.23(3)(b).

coffeemakers and other vending equipment. *Id.*, ¶14. Neither vendor had agreed "to undertake an obligation to inspect existing plumbing fixtures and connections, including the flexible water hose, and to replace it with another type of hose or to advise Weather Shield that the existing flexible water hose was not recommended." *Id.*, ¶15.

¶37 Similarly, in this case, Poppe merely agreed to pump Steinke's septic tank. There is no evidence in the record to suggest that Poppe also agreed to inspect the tank for damage, to inform Steinke of the tank's condition, or to repair any damage he found. Poppe went beyond his contractual obligation by informing Steinke in 2013 that his septic tank's lid needed to be replaced, and he attempted to do the same in 2016. The fact that Poppe did so as a matter of professional courtesy, however, does not mean that he had a required duty to warn Steinke about the lid's condition or to take other action, such as repairing the lid or roping off the area.

¶38 We also reject Steinke's assertion that Poppe had a duty to act because it was foreseeable that Steinke would fall into the septic tank. Poppe told Steinke in November 2013 that the septic tank's lid needed to be replaced. Steinke did not do so, and the lid remained in place until 2016 without incident. In September 2016, when Poppe returned to pump Steinke's septic tank a second time, Poppe stepped on the lid when attempting to locate it, but the lid did not collapse. On these facts, we conclude as a matter of law that it was not foreseeable Steinke would fall through the lid. As such, under the circumstances of this case, Poppe did not have a common law duty to warn Steinke about the lid's rusted condition or to take other action to address that condition.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.